**Fill in this information to identify the case:**

Debtor name    Tonawanda Coke Corporation

United States Bankruptcy Court for the:    WESTERN DISTRICT OF NEW YORK

Case number (if known)    1-18-12156

☑ Check if this is an amended filing

# Official Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy    04/16

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

## Part 1:    Income

1. **Gross revenue from business**

☐ None.

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|
| From the beginning of the fiscal year to filing date:<br>From 7/01/2018 to Filing Date | ☑ Operating a business<br>☐ Other | $9,714,000.00 |
| For prior year:<br>From 7/01/2017 to 6/30/2018 | ☑ Operating a business<br>☐ Other | $30,281,000.00 |
| For year before that:<br>From 7/01/2016 to 6/30/2017 | ☑ Operating a business<br>☐ Other | $29,750,000.00 |

2. **Non-business revenue**
Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☐ None.

| | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
|---|---|---|
| **From the beginning of the fiscal year to filing date:**<br>From 7/01/2018 to Filing Date | Freight and Misc | $429,000.00 |
| **For prior year:**<br>From 7/01/2017 to 6/30/2018 | Freight and Misc | $2,523,000.00 |
| **For year before that:**<br>From 7/01/2016 to 6/30/2017 | Freight and Misc | $2,004,000.00 |

## Part 2:    List Certain Transfers Made Before Filing for Bankruptcy

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

3. **Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,425. (This amount may be adjusted on 4/01/19 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None.

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| 3.1. (Please See Docket No. 86) | | $0.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,425. (This amount may be adjusted on 4/01/19 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None.

| Insider's name and address<br>Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
|---|---|---|---|
| 4.1. Paul A. Saffrin<br>PO Box 585<br>Orchard Park, NY 14127<br>Chief Executive Officer | 1/25/2018<br>9/20/2018 | $10,597.19 | Expense Reimbursement |
| 4.2. Ausmus Corporation<br>PO Box 633<br>Buffalo, NY 14221<br>Affiliate | Various | $2,159,840.07 | Freight to Customers, Coke Handling Services |
| 4.3. Ausmus Corporation<br>PO Box 633<br>Buffalo, NY 14221<br>Affiliate | Various | $658,733.90 | Freight to Customers, Coke Handling Services |
| 4.4. Erie Coke Corporation<br>PO Box 6180<br>Erie, PA 16512<br>Affiliate | Various | $105,983.99 | Coke and Coal Purchases, Production Supplies |
| 4.5. Kirchner, LLC<br>PO Box 242<br>Tonawanda, NY 14151-0242<br>Affiliate | Various | $793,769.55 | Contract Labor Services |
| 4.6. Tarver Transit Corporation<br>PO Box 287<br>Tonawanda, NY 14151-0287<br>Affiliate | Various | $215,930.45 | Freight Brokerage Coal |
| 4.7. Vanocur Refractories LLC<br>PO Box 146<br>Tonawanda, NY 14151-0146<br>Affiliate | Various | $3,996.00 | Refractory Supplies & Services |

5. **Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at

a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☑ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|

6. **Setoffs**
List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|

<br>

**Part 3:    Legal Actions or Assignments**

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**
List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☐ None.

| Case title<br>Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| 7.1.    Please See Docket No. 86 | | | ☐ Pending<br>☐ On appeal<br>☐ Concluded |

8. **Assignments and receivership**
List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

<br>

**Part 4:    Certain Gifts and Charitable Contributions**

9. **List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☐ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|
| 9.1.    Various | | Various | $8,720.00 |
| Recipients relationship to debtor | | | |

<br>

**Part 5:    Certain Losses**

10. **All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br><br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property).* | Dates of loss | Value of property lost |
|---|---|---|---|

## Part 6:    Certain Payments or Transfers

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None.

| | Who was paid or who received the transfer?<br>Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| 11.1. | Hodgson Russ LLP<br>The Guaranty Building<br>140 Pearl Street, Suite 100<br>Buffalo, NY 14202 | Retainer | 10-4-18 - present | See Retention Application |
| | **Email or website address**<br>www.hodgsonruss.com | | | |
| | **Who made the payment, if not debtor?** | | | |
| 11.2. | Pepper Hamilton LLP<br>1313 North Market Street<br>Suite 5100<br>Wilmington, DE 19894-1709 | Retainer | 07/18 | $3,000.00 |
| | **Email or website address**<br>www.pepperlaw.com | | | |
| | **Who made the payment, if not debtor?** | | | |

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☑ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

**13. Transfers not already listed on this statement**

List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None.

| Who received transfer?<br>Address | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|

## Part 7:    Previous Locations

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☑ Does not apply

| Address | Dates of occupancy From-To |
| --- | --- |

## Part 8: Health Care Bankruptcies

15. **Health Care bankruptcies**
Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
| --- | --- | --- |

## Part 9: Personally Identifiable Information

16. **Does the debtor collect and retain personally identifiable information of customers?**

☑ No.
☐ Yes. State the nature of the information collected and retained.

17. **Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☐ No. Go to Part 10.
☑ Yes. Does the debtor serve as plan administrator?

    ☐ No Go to Part 10.
    ☑ Yes. Fill in below:

| Name of plan | Employer identification number of the plan |
| --- | --- |
| Tonawanda Coke Corporation Salaried Employees 401(k) Plan - Plan 002 | EIN: 16-1098956 |

Has the plan been terminated?
☑ No
☐ Yes

    ☐ No Go to Part 10.
    ☑ Yes. Fill in below:

| Name of plan | Employer identification number of the plan |
| --- | --- |
| Tonawanda Coke Corporation Hourly 401(k) Plan - Plan Number 003 | EIN: 16-1098956 |

Has the plan been terminated?
☑ No
☐ Yes

    ☐ No Go to Part 10.
    ☑ Yes. Fill in below:

| Name of plan | Employer identification number of the plan |
| --- | --- |
| Tonawanda Coke Corporation Group Insurance Plan - Plan Number 501 | EIN: 16-1098956 |

Has the plan been terminated?
☑ No
☐ Yes

## Part 10: Certain Financial Accounts, Safe Deposit Boxes, and Storage Units

Case 1-18-12156-MJK, Doc 163, Filed 01/22/19, Entered 01/22/19 15:59:15, Description: Main Document , Page 5 of 22

**18. Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Do you still have it? |
|---|---|---|---|

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Do you still have it? |
|---|---|---|---|

**Part 11:  Property the Debtor Holds or Controls That the Debtor Does Not Own**

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☐ None

| Owner's name and address | Location of the property | Describe the property | Value |
|---|---|---|---|
| Powers Coal & Coke, LLC<br>4807 Rockside Rd.<br>Ste 640<br>Cleveland, OH 44131 | 3875 River Road<br>2558 Hamburg Turnpike<br>Key Bank | Coal & Coke<br>Coal & Coke<br>A/C 359681383105 | $5,200,000.00 |

**Part 12:  Details About Environment Information**

For the purpose of Part 12, the following definitions apply:

*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22.  Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☐ No.
☑ Yes. Provide details below.  (Please see attached)

| Case title Case number | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☐ No.
☑ Yes. Provide details below.  (Please see attached)

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

☐ No.
☑ Yes. Provide details below.  (Please see attached)

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

**Part 13:    Details About the Debtor's Business or Connections to Any Business**

**25. Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☑ None

| Business name address | Describe the nature of the business | Employer Identification number Do not include Social Security number or ITIN. Dates business existed |
|---|---|---|

**26. Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.
☑ None

| Name and address | Date of service From-To |
|---|---|

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | Date of service From-To |
|---|---|
| 26b.1.   Chiampou Travis Besaw & Kerschner LLP 45 Bryant Woods North Amherst, NY 14228 | 1993 to Present |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| 26c.1.   n/a | FYE June 30, 2018 not finalized and ME 7/31/18, 8/31/18, 9/30/18 not closed, and cash disbursements 07/18 and 08/18 not recorded due to changeover in accounting department |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

**Name and address**

| Name and address |
| --- |
| 26d.1.  Powers Coal & Coke, LLC<br>11 LLoyd Avenue<br>Suite 200<br>Latrobe, PA 15650 |
| 26d.2.  Duke Hozman Photiadis & Gresens LLP<br>701 Seneca Street<br>Suite 750<br>Buffalo, NY 14210 |
| 26d.3.  Huron Consulting Group<br>1166 Avenues of the Americas<br>Suite 300<br>New York, NY 10036 |
| 26d.4.  Affinity Insurance LTD.<br>John R. Flanagan<br>Independent CPA Financial Analyst<br>420 Fifth Street<br>Wheeling, IL 60090 |
| 26d.5.  RT Speciality on Behalf of<br>USI Insurance Services<br>1301 E. 9th St.<br>Suite 3800<br>Cleveland, OH 44114 |

27. **Inventories**
Have any inventories of the debtor's property been taken within 2 years before filing this case?

☐ No
☑ Yes. Give the details about the two most recent inventories.

| | Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
| --- | --- | --- | --- |
| 27.1. | Patrick Orloff | 6/29/18 | $5,000,000 Est |
| | **Name and address of the person who has possession of inventory records**<br>need information | | |
| 27.2. | Patrick Orloff | 6/29/17 | $6,416,000 Est. |
| | **Name and address of the person who has possession of inventory records**<br>none | | |

28. **List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
| --- | --- | --- | --- |
| Tamroy Inc | PO Box 610<br>Getzville, NY 14068 | Board of Directors | 100 |

| Name | Address | Position and nature of any interest | % of interest, if any |
|------|---------|-------------------------------------|------------------------|
| Paul A. Saffrin | PO Box 585<br>Orchard Park, NY 14127 | Chief Executive Director | 0 |

| Name | Address | Position and nature of any interest | % of interest, if any |
|------|---------|-------------------------------------|------------------------|
| Michael K Durkin | 18 Applefield Drive<br>Buffalo, NY 14221 | President | 0 |

| Name | Address | Position and nature of any interest | % of interest, if any |
|------|---------|-------------------------------------|------------------------|
| Matthew A Schima | 1442 Bich Drive<br>North Tonawanda, NY 14120 | VP Env Compliance | 0 |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No
☑ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|------|---------|-------------------------------------|---------------------------------------------------|
| Patrick J Orloff | 3995 Andrews Road<br>Ransomville, NY 14131 | Chief Financial Officer | 5/17 - 9/18 |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|------|---------|-------------------------------------|---------------------------------------------------|
| Robert J Kubenka | 170 Berkley Road<br>Buffalo, NY 14221 | VP Env Compliance | 3/16 - 5/18 |

30. **Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No
☑ Yes. Identify below.

| | Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|-------------------------------|------------------------------------------------------|-------|--------------------------------|
| 30.1. | Paul A. Saffrin<br>PO Box 585<br>Orchard Park, NY 14127 | 135416.75 | Bimonthly | Salary |
| | **Relationship to debtor**<br>Chief Executive Officer | | | |
| 30.2. | Michael K Durkin<br>18 Applefield Drive<br>Buffalo, NY 14221 | 78125.00 | Bi Monthly | Salary |
| | **Relationship to debtor**<br>President | | | |

| | Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|---|
| 30.3. | Patrick J Orloff<br>3995 Andrews Road<br>Ransomville, NY 14131p | 57291.75 | Bi Monthly | Salary |
| | **Relationship to debtor**<br>Former CFO | | | |
| 30.4. | Matthew A. Schiimpf<br>1442 Bich Drive<br>North Tonawanda, NY 14120 | 23333.36 | Bi Monthly | Salary |
| | **Relationship to debtor**<br>VP Env Compliance | | | |
| 30.5. | Robert J Kuberka<br>170 Berkley Road<br>Buffalo, NY 14221 | 50974.28 | Bi Monthly | Salary |
| | **Relationship to debtor**<br>Former VP Env Compliance | | | |

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ No
☑ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| Cooper Meridian LLC | EIN: |

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No
☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the parent corporation |
|---|---|

**Part 14:  Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **January 22, 2019**

/s/ Michael K. Durkin                                          Michael K. Durkin
Signature of individual signing on behalf of the debtor        Printed name

Position or relationship to debtor    President

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**
☐ No
☑ Yes

**Tonawanda Coke Corporation**
**Schedule to Statement of Financial Affairs (Questions 22-24)**

22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.

**Tonawanda Coke Corporation's Response:**

Yes. Tonawanda Coke Corporation (the "debtor") has been a party to several judicial or administrative proceedings and consent orders. To the best of the debtor's knowledge, these proceedings and consent orders over the past decade are listed below.

In an effort to explain these matters, the debtor has been subject to three primary enforcement actions: (1) a Federal environmental criminal matter; (2) various State and Federal administrative and compliance matters, including legacy issues; and (3) a State administrative proceeding to revoke the debtor's air permits. Each are summarized below.

(1) Federal Environmental Criminal Matter.

In December 2009, federal agents raided the debtor's facility. On July 29, 2010, the debtor and its Environmental Manager were indicted in federal court for violations of the Clean Air Act ("CAA"), the Resource Conservation and Recovery Act ("RCRA"), and obstruction of justice. In March 2013, following a month long trial, a jury convicted the debtor and its environmental manager on 14 of 19 felony counts. Ultimately, the environmental manger was fired, and sentenced to one month in jail. On March 19, 2014, the debtor was sentenced to 5 years of probation, a $12,500,000 criminal fine payable over 5 years, and was required to fund two environmental impact studies totaling $12,200,000 over the same 5-year period. The debtor's financial obligations related to the sentence totaled $24,658,462.

The debtor was more than 4 years into its probation, and had made all of the required criminal payments, when on or about August 24, 2018 the United States Attorney's Office ("USAO") filed a "Petitioner Offender Under Supervision" with the Federal Court (WNDY) claiming that the debtor violated probation by not complying with the Consent Decree (described in (2) below). The debtor admitted that due to an unforeseen collapse of a waste heat tunnel, it was in violation of certain opacity requirements in the law and in the Consent Decree. The debtor worked hard to fix the opacity issues, including engaging a nationally renowned firm (Westbrook Thermal Technology ("Westbrook")) to assist, and vigorously defended itself against the alleged probation violation. After numerous court conferences, submissions, and a hearing, the Court found the debtor guilty of violating probation, but did not shut down the debtor as the USAO had requested.

Instead, the Court modified and enlarged the probation to include three new conditions: (1) the debtor was ordered to complete the battery stack test protocol that the New York State Department of Environmental Conservation ("NYSDEC") approved on an expedited basis. Testing was to be completed and a final report issued within 60 days of the completion of the Westbrook battery repairs, which were ordered to be completed on or before October 13, 2018. (2) the debtor was ordered to implement each of the recommendations in the Westbrook Root Cause Analysis for Stack Opacity Final Report on an expedited basis. (3) the debtor was

ordered to submit to monitoring by an independent third-party compliance monitor and will bear the cost of such monitoring. Counsel for the debtor and USAO were ordered to work to agree on a suitable third-party monitor. All other conditions of probation previously imposed remained in place, obligation to make the final community service payment. The debtor worked diligently to comply with these terms of probation, but ultimately was unable to reach various milestones and due to extreme financial strain began shutting down operations on October 13 and filed for bankruptcy on October 15, 2018.

(2) State and Federal Administrative and Compliance Matters.

    (a)    EPA Administrative Order, Index No. CAA – 02-2010-1005 (April 28, 2010)

        The debtor received this Administrative Compliance Order ("ACO") on or about April 28, 2010. This ACO included 7 substantive projects requiring a number of actions, including the development and implementation of a schedule for repair and maintenance of exhausters and back-up generators at the facility, an assessment of the root causes of two failures at the plant in March 17, 2009 and March 31, 2010, and implementation of any recommended actions identified from said assessment. In response to the ACO, Conestoga-Rovers & Associates ("CRA") drafted a September 2010 "Incident Investigation and Engineering Assessment" for the debtor outlining 18 activities that should be undertaken at the facility. The debtor promptly completed most of the activities. Pursuant to an October 27, 2010 letter from the United States Environmental Protection Agency ("EPA"), the debtor provided ongoing monthly status reports concerning status and progress until the outstanding activities were ultimately completed to the satisfaction of EPA.

    (b)    EPA Compliance Order, CAA-02-2010-1001 (January 7, 2010)

        The debtor received this ACO on January 11, 2010, and a formal meeting was held with EPA on February 8, 2010. This ACO included 21 substantive projects, including the sealing and ducting of openings on tar-intercepting sumps and ammonia still liquor tanks, submission of certain documentation, development of certain calibration and operation procedures, implementation of certain training procedures, and compliance with regulatory required monitoring programs. The debtor addressed all outstanding items, and final approval was granted by letter dated July 15, 2010.

    (c)    EPA Compliance Order, CAA-02-2010-1002 (February 4, 2010)

        The debtor received this ACO on February 5, 2010. After discussions, the debtor provided a substantive response to all ordered provisions on April 12, 2010, including an engineering analysis of the baffle system, analytical results from sampling of the quench tower make-up water, and a commitment to undertake quarterly make-up water sampling.

    (d)    NYSDEC Order on Consent, R9-20110315-7 (July 19, 2011)
            EPA Compliance Order on Consent, CAA-02-2011-1013 (July 19, 2011)

        These Orders on Consent were the product of dual orders from both agencies. The orders required 11 major projects, including the finalization and use of a coke oven gas leak survey program (voluntary program not regulatory required), installation of certain equipment on

the west flare stack, development and implementation of recommendations from an engineering analysis of the impacts of ammonia emissions from the ammonia still, development and implementation of a condensate program (including addressing existing on-site equipment, and fabrication of new components), development and implementation of a vessel venting program (including addressing existing on-site equipment, and fabrication of new components), completion of repairs to the top of the tar decanter unit, installation of a facility-wide Programmable Logic Controller ("PLC") hub system, rehabilitation of the ammonia scrubber system and tar precipitator, disconnecting and purging of the light oil scrubber from the coke oven gas system, development and implementation of an engineering assessment of by-passes in the coke oven gas system, installation of a new LGA unit, and modification of the primary cooler system. The vast majority of these required tasks involved significant alteration to the facility's by-product area, as well as voluntary changes to the facility's operations and monitoring regime. Upon information and believe, all items were completed by December 2014.

(e)     EPA Administrative Compliance Order, CWA-02-2010-3012 (December 19, 2009)

        The debtor received this ACO on December 24, 2009. It included 7 substantive projects, including elements derived from EPA's and NYSDEC's comprehensive Clean Water Act inspection of mid-2009. The debtor completed 4 of the 7 substantive projects within the approved timeframes. Of the remaining 3 requirements, each involved follow up work that necessitated completion beyond the originally required timeframes, which included the Outfall 002 Plan of Action, a number of physical investigations of the debtor's sewers, and the replacement of wastewater treatment tanks. Work related to these 3 items were underway when ACO CWA-02-2010-3040 was issued, which included a subsequent schedule for their completion. Therefore, the issuance of ACO CWA-02-2010-3040 effectively superseded the remaining requirements of this ACO.

(f)     EPA Administrative Compliance Order, CWA-02-2010-3040 (August 6, 2010)

        The debtor received this ACO on August 12, 2010. It contained 12 substantive projects including certain follow up items to those required by ACO CWA-02-1020-3012, and the requirement that the debtor prepare and implement a plan to achieve compliance with the debtor's Town of Tonawanda discharge permit. Seven of the 12 substantive projects were met prior to the issuance of ACO CWA-02-2100-3013. Work related to the 5 open projects were underway when ACO CWA-02-2011-3013 was issued, which included a subsequent schedule for their completion. Therefore, the issuance of the ACO CWA-02-2011-3013 effectively superseded the remaining requirements of this ACO.

(g)     EPA Administrative Compliance Order, CWA-02-2011-3013 (January 20, 2011)

        The debtor received this ACO on January 27, 2011. It contained 11 substantive projects including the implementation of revised schedules from ACO CWA-02-2010-3040. Ten of the 11 substantive projects were completed by November 27, 2011, with the remaining substantive project included in ACO CWA-02-2012-3014 upon its issuance. Therefore, the issuance of ACO CWA-02-2012-3014 effectively superseded the remaining requirement of this ACO.

(h)     EPA Administrative Compliance Order and Request for Information, CWA-02-2012-3014 (December 27, 2011)

The debtor received this ACO on December 29, 2011. It included 5 substantive projects, including that the debtor complete relocation and installation of the new ammonia still unit, finalize the routing of the ammonia still effluent to boiler #7, certify the facility's compliance with the terms of its Town of Tonawanda discharge permit, submit certain reports regarding all actions taken to reach compliance with the terms of its Town of Tonawanda discharge permit, and conduct post-certification monitoring of certain levels associated with the term of the Town of Tonawanda discharge permit by monthly composite sampling.

Relocation of the ammonia still was completed by May 31, 2012, with use of the unit beginning June 5, 2012 after addressing certain start-up conditions.  The debtor was granted an extension of time to certify compliance with the terms of its Town of Tonawanda discharge permit until September 30, 2012, which it did on September 28, 2012.  On November 27, 2012, EPA requested additional sampling and monitoring requirements before it would certify all aspects of the ACO were addressed.  After a certain period of time, all aspects of the ACO were addressed, and the milestone achieved.

(i)     EPA Complaint, Compliance Order and Notice of Opportunity for Hearing, RCRA-02-2010-7104; EPA Consent Agreement and Final Order, RCRA-02-2010-7104; EPA Consent Agreement and Final Order, RCRA-02-2012-7102; EPA Consent Agreement and Final Order, RCRA-02-2012-7104 (December 27, 2009; August 3, 2010; March 10, 2011; March 26, 2012)

EPA filed the original complaint on December 27, 2009 alleging certain violations of New York State and Federal hazardous waste programs.  On August 3, 2010, EPA and the debtor entered into a Consent Agreement and Final Order ("CAFO") in order to resolve the EPA complaint without the need for litigation.  As part of the CAFO, the debtor did not admit to any of the allegations by EPA, and the debtor agreed to undertake a remediation project in the vicinity of the former Barrett tank area.  During the project, NYSDEC oversaw daily on-site operations, including the excavation and recycling of the harvested tar-like material.

During the course of the project, a significant amount of historic tar-like material was identified on-site.  This material was associated with the operation of the facility prior to the debtor's ownership.  The debtor agreed to extend the scope of the remediation project, which necessitated revisions to the original CAFO.  On June 15, 2012, the debtor filed a final report with EPA documenting compliance with CAFO, including the remediation of an area 18 times larger than originally agreed.

(j)     Consent Decree, WDNY Case No. 1:15-cv-00420 (April 20, 2015)

At the same time that the criminal investigation and trial were ongoing (as described in (1) above), the debtor received various requests for information and compliance orders from EPA and NYSDEC.  After many discussions, meetings, and exchanges of information, on April 10, 2015, the debtor agreed to the terms of a consent decree with NYSDEC, the New York Attorney General ("NY AG"), EPA and the United States Department

of Justice ("DOJ") (NYSDEC, NY AG, EPA, and DOJ are collectively referred to as the "Agencies"). The Consent Decree was a global resolution of all administrative allegations and claims pending against the debtor. As part of the Consent Decree's terms, the debtor committed to undertake certain capital projects and process upgrades at its facility to address the concerns of the Agencies, paid civil penalties to the Federal and State governments totaling $2.75 million, paid $1 million to New York State to be used as an Environmental Benefit Project, and agreed to undertake a Supplemental Environmental Project in an amount not less than $357,000. In addition, pursuant to the Consent Decree, the debtor submitted semi-annual reports to the Agencies in 2016, 2017 and 2018. These semi-annual reports provided information requested by the Agencies for the prior six-month period, and also reported any violations or significant issues encountered during that time period.

(k)     Legacy Matter at 3875 River Road, Tonawanda, New York.

On September 14, 2015, the debtor reported to the NYSDEC Spills Hotline the identification of an unknown material, believed to be historic coal tar sludge, which appeared to have seeped up from the ground at the main operational facility. It was subsequently determined that this issue should not be addressed through the State's spill program. In November 2015, NYSDEC proposed two options for dealing with this issue, and required a response from the debtor by December 14, 2015. The debtor responded that it was not the party responsible for the material, respectfully redirected NYSDEC to whom it believes is the responsible party (a prior site operator), and noted the need to undertake a formal administrative process prior to imposing one of the two proposed options.

In May 2016, NYSDEC informed the debtor that the presence of this material required the debtor to assess the potential impact of hazardous wastes across the entire plant site, given its current listing in the New York State Inactive Hazardous Waste Registry (Registry), and develop a Focused Feasibility Study to remediate the entire plant site. Prior actions to date under the Registry had only required investigation of two specific operable units. The debtor and counsel had several meetings and communications with NYSDEC to discuss and clarify a number of issues with respect to the order. The debtor and NYSDEC executed an order in December 2016. The debtor then submitted a Remedial Investigation/Feasibility Study ("RI/FS") Work Plan for the entire site except two previously closed operable units at the site for which the filing of an Environmental Easement (with a corresponding Site Management Plan) is required.

Since that time, the debtor has had numerous discussions and meetings with NYSDEC, as well as exchange of correspondence, to further discuss the scope of the investigatory activities to be undertaken at the site, and the details of the RI/FS Work Plan. The debtor engaged an environmental consultant (GHD Services) to assist, including drafting the RI/FS Work Plan and relevant documents. On June 15, 2018, GHD submitted a draft of the RI/FS Work Plan to NYSDEC.

(l)  Legacy Matter at 3800 River Road, Tonawanda, New York.

On November 7, 2014, the debtor entered into an Order on Consent and Administrative Settlement (Index No. B9-85-02-77B) with NYSDEC with regard to a parcel of

land located at 3800 River Road in Tonawanda, New York. This parcel has been referred to as "Site 108," and was involved in historical investigative activities along with the two operable units at the main operational facility. It is located across River Road, adjacent to the Niagara River, with the only operational use being the housing of an electrical building.

The Site 108 Order required the debtor to investigate and address certain on-site environmental conditions associated with the parcel's historic use, all of which occurred prior to the debtor's ownership. Submissions were made as required in December 2014 and mid-January 2015. After various discussions, the debtor was required to undertake a more extensive remedial investigation. At a late November 2016 meeting discussing the results and their implications for the Focused Feasibility Study ("FFS"), it was mutually agreed by the parties that an Interim Remedial Measure ("IRM") should be instituted to further characterize certain aspects of the site and pilot possible remediation methods. An IRM Work Plan proposal was submitted, as required in January 2017, and NYSDEC subsequently granted an extension of the revised FFS submittal to June 23, 2017. In February 2017 and March 2017, through separate communications, NYSDEC provided comments and requested revisions to both the Confirmation Investigation Report and the IRM Work Plan. Both documents were subsequently finalized and submitted on March 17, 2017 and May 1, 2017, respectively. The debtor completed roughly 70% of the IRM Work Plan before suspending excavation activities for the winter on October 15, 2017. Subsequently, the debtor received conditional approval from NYSDEC with respect to a Material Processing and Inspection Plan to cover winter inspection activities for the site, as well as certain related operational considerations associated with the management and processing of materials. The debtor initiated work under this plan in late-February 2018. Given the ongoing activities of the IRM work plan, the revised FFS submittal deadline of January 31, 2018 was extended.

In the Spring of 2018, under the supervision of NYSDEC, the debtor initiated transferring certain material from Site 108 to the Plant for remediation in the battery. However, due to issues with the partial collapse of the waste heat tunnel (see above), NYSDEC halted all processing of material, and by letter dated May 17, 2018, gave the debtor 30 days to dispose of the material present at the main facility's recycling pad as hazardous waste. All such material was containerized, and sent off site. In addition, by letter dated May 21, 2018, NYSDEC required the conclusion of all IRM work and/or the proper disposal of all tar-impacted material from Site 108 within 90 days of the date of the letter. The debtor sought alternatives to resolve these issues, and had multiple communications and meetings with NYSDEC to discuss. Since the debtor filed for bankruptcy, the debtor has had discussions with EPA and DOJ about providing Honeywell access to Site 108 to look into these issues further. On January 16, 2019, the Bankruptcy Court approved the debtor entering into an access agreement with Honeywell for Site 108.

(3) Revocation Proceeding.

On July 20, 2018, NYSDEC sent a letter to the debtor demanding that the company "immediately cease and desist ongoing violations of the Environmental Conservation Law and its implementing regulations." In this letter, NYSDEC provided a Notice of Violation and a Notice of Intent to Revoke the debtor's Air Title V facility Permit and Air State Facility

Permit. By letters dated July 24, 2018 and July 31, 2018, the debtor provided reasons why the permits should not be revoked. The debtor met with the Agencies on August 16, 2018 to discuss the "cease and desist" letter, alleged violations of the Consent Decree, and a work plan to compliance.

An administrative law judge ("ALJ") was assigned to the revocation matter, and a revocation proceeding was scheduled to begin on October 10, 2018. After appearing for the proceeding, the ALJ was adjourned to allow the parties to continue discussing settlement. After settlement discussions, the debtor agreed to shut down operations. Shut down operations began on or about October 13, 2018. On October 15, 2018 the debtor filed for bankruptcy. The debtor and the NYSDEC discussed a Stipulation of Discontinuance for the revocation proceeding. The Stipulation was approved by the Bankruptcy Court in December 2018 and expected to be finalized in January 2019.

23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?

**Tonawanda Coke Corporation's Response:**

Yes. In addition to those matters described in response to question 22 above, upon information and belief, over the past decade, the debtor has received the following notices of violation from various governmental units:

(1)     NYSDEC, Article 19 of ECL (October 19, 2009)

The Notice of Violation ("NOV") identified that the facility did not have the proper baffle system installed on its quench tower operations. This NOV was addressed when baffles were installed in the Winter 2009.

(2)     NYSDEC, Three (3) NOVs, Article 19 of ECL (July 16, 2010)

The basis of the three (3) NOVs were alleged violations associated with the facility's limit on percentages of leaking doors, leaking off-takes, and excessive coal charging emissions. After further discussions with NYSDEC, it was determined that any actions required to address all stated violations would be handled in conjunction with a comprehensive settlement agreement.

(3)     NYSDEC, Failure to Submit Complete SPDES DMR (January 18, 2011)

Original Discharge Monitoring Report ("DMR") was timely submitted, but lacked original signature. All parties governed by SPDES regulations are allowed to resubmit copies of DMR reports with original signature within 30 days of receipt of any NOV without penalty. The debtor submitted an original executed copy of the DMR on January 24, 2011.

(4)     NYSDEC, Failure to Submit Complete SPDES DMR. (June 16, 2011)

Original DMR was timely submitted, but lacked original signature.  All parties governed by SPDES regulations are allowed to resubmit copies of DMR reports with original signature within 30 days of receipt of any NOV without penalty.  The debtor submitted an original executed copy of the DMR on June 20, 2011.

(5)     NYSDEC, Article 19 of ECL (September 21, 2011)

The debtor responded on January 30, 2012 to the NOV noting that the alleged violations were not valid, as NYSDEC was improperly calculating emissions from leaking doors and off-takes because of the use of federal methods and not those dictated by the state. NYSDEC provided confirmation on May 29, 2012 acknowledging miscalculation.

(6)     EPA, CAA-02-2010-1301, Section 113(a)1 (December 7, 2009)

The debtor responded on December 18, 2009.  The debtor completed reinstallation of the baffle system, and agreed to comply with all regulations related to the sampling and analysis of all quench tower make-up water.

(7)     EPA, CAA-02-2010-1303, Section 113(a)1 (April 12, 2010)

After further discussions with the Agencies, it was determined that any actions required to address all stated violations would be handled in conjunction with a comprehensive settlement agreement.

(8)     Town of Tonawanda, NOV No. 331-4, Sewer Use Ordinance, Section 165-20 B, 165-20 F (March 22, 2010), Town of Tonawanda, NOV No. 331-5, Sewer Use Ordinance, Section 165-20 B, 165-20 F (April 1, 2010), Town of Tonawanda, NOV No. 331-8, Sewer Use Ordinance, Section 165-20 B, 165-20 F (November 22, 2011)

The basis of these several NOVs was a cyanide exceedance above the facility's permit limitation.  The debtor responded on various dates thereafter, and explained that the cause of the violation was the dephlegmator unit used in conjunction with the ammonia still, which was required to be maintained on the unit by NYSDEC and EPA even though the debtor had made multiple requests to remove it.  The responses also noted that the debtor had engaged a consultant to undertake an engineering evaluation, and to recommend a long-term engineering and operational solution to the cyanide exceedance issue.  The results of the evaluation determined that the likely cause of the exceedances was the use of the dephlegmator, and recommended that the ammonia still unit be replaced.  This information was conveyed to the Agencies, and acted as a basis for discussions that led to the replacement of the ammonia still unit at the facility.

(9)     Town of Tonawanda, NOV No. 331-6, Sewer Use Ordinance, Section 165-20 B, 165-20 F (December 14, 2010)

The basis of the NOV was in regards to a naphthalene exceedance.  The debtor responded on December 20, 2010, and included subsequent sampling and analysis verifying compliance with the applicable permit requirement.

(10)     Town of Tonawanda, NOV No. 331-7, Sewer Use Ordinance, Section 165-20 B, 165-20 F (August 17, 2011)

The debtor responded and noted that the exceedance was due to a plugged steam control box, which was taken off-line, dismantled, cleaned, and re-installed.  Follow up sampling indicated that this action addressed the cause of the exceedance.

(11)     Town of Tonawanda, NOV No. 331-9, Sewer Use Ordinance, Section 165-20 B, 165-20 F (December 20, 2011)

The basis of the NOV was in regards to a cyanide exceedance.  The notice identified that ongoing EPA enforcement regarding on-going cyanide exceedances, so no further action required by the Town of Tonawanda.  Until filing for bankruptcy and tendering its permits, the debtor had monitored its current operations in order to maintain compliance with its Town of Tonawanda discharge permit.

(12)     Town Of Tonawanda, NOV No. 331-10, Sewer Use Ordinance, Section 165-20 B, 165-20 F (January 20, 2012)

The basis of the NOV was in regards to a cyanide exceedance.  The notice identified that ongoing EPA enforcement regarding on-going cyanide exceedances, so no further action required by the Town of Tonawanda.

(13)     Town of Tonawanda, NOV No. 331-17, Sewer Use Ordinance, Section 165-20 F (January 15, 2013)

Formal investigation into the root cause of a mercury exceedance above the Town of Tonawanda discharge permit required by the Town.  The debtor conducted a review, provided an explanation, made changes to its operations, and got into compliance.

(14)   Naphthalene Exceedance.

By letter dated March 23, 2018, DOJ informed the debtor of stipulated penalties under the Consent Decree for a series of naphthalene exceedances in its wastewater discharges to the Town of Tonawanda from November 2017 continuing through the Spring 2018.  DOJ noted that this was the third instance where DOJ sought these remedies.  The debtor then worked cooperatively with DOJ, EPA, NYSDEC, and the Town of Tonawanda to address the exceedances. The exceedances continued through early May 2018.  After several discussions with the Agencies and the exchange of correspondence, DOJ noted that the stipulated penalties under the Consent Decree total in excess of $93,750, but the Agencies agreed to accept $65,750 as settlement in full.  The debtor submitted a pilot plan to the agencies on July 2, 2018.  The

Agencies provided comments on the pilot plan on August 27, 2018. On September 7, 2018, the debtor paid the stipulated penalties of $65,750 by wiring $32,875 to EPA and sending a certified check for $32,875 to NYSDEC. The debtor did not implement the pilot plan because there are no longer any operations at the facility.

As part of the naphthalene issue, on June 25, 2018, the Town of Tonawanda issued a Notice of Violation for the debtor exceeding its permit limit for discharging Naphthalene on May 2, 2018 (the permit limit is .0326 pounds per day, and on May 2, 2018 the debtor's discharge was .038 pounds).

(15) Whole Effluent Toxicity Testing ("WET Testing") Noncompliance.

On June 8, 2018, the debtor submitted a "Report of Noncompliance Event" to NYSDEC because it missed the first quarter 2018 sampling event on outfall 004 for WET Testing as required by its SPDES Permit (NPDES ID #NY0002399). The debtor sampled and analyzed outfall 004 as soon as the error was identified. After communications with NYSDEC, it was determined that the WET Testing schedule would be modified so that the debtor can carry over the WET Testing to the first quarter of 2019.

(16) Opacity Violations.

On May 11, 2018, the debtor informed the NYSDEC through a Malfunction Report of a "sustained reduced coke oven battery stack condition." As explained previously, this condition was created by a collapse of a portion of the battery waste heat tunnel. Measures were taken over several months to address the condition, and EPA and NYSDEC sent letters requesting various tests. Also, the debtor thereafter received the several Notices of Violation ("NOV") from NYSDEC for opacity violations under the New York State Air Pollution Control Law, Article 19 of the Environmental Conservation Law. Upon information and belief, these NOVs are dated June 6, 2018, June 11, 2018, June 18, 2018, July 6, 2018, July 23, 2018, August 3, 2018, August 24, 2018, September 6, 2018, and September 25, 2018.

(17) Chemical Bulk Storage Violations.

On July 19, 2018, NYSDEC sent a letter to the debtor with various violations of New York's Chemical Bulk Storage regulations, and required corrective actions. The debtor addressed some of those violations prior to filing for bankruptcy and prior to shutting down operations. At this time, no penalties have been assessed.

(18) Petroleum Bulk Storage Violations.

On July 19, 2018, NYSDEC sent a letter to the debtor with various violations of New York's Petroleum Bulk Storage regulations, and required corrective actions. The debtor addressed some of those violations prior to filing for bankruptcy and prior to shutting down operations. At this time, no penalties have been assessed.

(19)  Violations of Hazard Waste Regulations.

On July 20, 2018, NYSDEC sent a letter to the debtor with various violations of New York's Hazardous Waste Regulations, and required corrective actions.  The debtor responded to these violations by written submissions on July 31, August 3, and August 7, 2018. At this time, no penalties have been assessed.

(20)  Notice of Violation for Failure to submit complete SPDES DMR(s).

By letter dated November 21, 2018, NYSDEC sent a letter to the debtor alleging that DMR(s) due for the period ending September 30, 2018 were either not received or were incomplete.  The debtor's counsel called NYSDEC on December 19, 2018 and informed NYSDEC that the debtor had shut down operations beginning on October 13, filed for bankruptcy on October 15, and no longer had any employees as of about October 28, 2018.

(21)  Notice of Violation for Failure to submit complete SPDES DMR(s).

By letter dated December 20, 2018, NYSDEC sent a letter to the debtor alleging that DMR(s) due for the period ending October 31, 2018 were either not received or were incomplete.  The debtor's counsel informed NYSDEC that the debtor had shut down operations beginning on October 13, filed for bankruptcy on October 15, and no longer had any employees as of about October 28, 2018.


24. Has the debtor notified any government unit of any release of hazardous material.

**Tonawanda Coke Corporation's Response:**

Yes.  Upon information and belief, the debtor has fulfilled its legal requirements to the best of its ability as set forth in publicly available records and as described in the responses above to numbers 22 and 23.


The debtor reserves its right to amend and supplement these disclosures as necessary.

(Rev. 12/16: Previous Versions are Obsolete)

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF NEW YORK

## AMENDED COVER SHEET FOR SCHEDULES, STATEMENTS, LISTS AND/OR AMENDMENTS

**Case Name:** Tonawanda Coke Corporation          **Case No.** 1-18-12156          **Chapter** 11

### A. IDENTIFY TYPE OF DOCUMENT BEING FILED: (Select either #1, #2 or #3)

- [x] #1--Amendment to Previously Filed Document (Go to Sec. B)
- [ ] #2--Schedule/Statement Not Previously Filed (Go to Sec. B)
- [ ] #3–Schedule of Post-Petition Debts (result of conversion–no fee due) (Go to Sec. D)

### B. SUMMARIZE SPECIFICS OF DOCUMENT BEING FILED BY CHECKING APPLICABLE DATA ELEMENTS:

- [ ] Official Form 101: [ ] Part 1 [ ] Part 2 [ ] Part 3 [ ] Part 4 [ ] Part 5 [ ] Part 6 [ ] Part 7
- [ ] Official Form 106Sum: Summary of Your Assets and Liabilities and Certain Statistical Information
- [ ] Official Form 106Dec: Declaration About an Individual Debtor's Schedules
- [ ] Official Form 108: Chapter 7 Statement of Intention for Individuals
- [ ] Schedules: (Please check schedules attached)
  - [ ] Schedule A/B [ ] Schedule C [ ] Schedule D (Go to Sec. C) [x] Schedule E/F (Go to Sec. C)
  - [ ] Schedule G [ ] Schedule H [ ] Schedule I [ ] Schedule J [ ] Schedule J-2
- [x] Statement of Financial Affairs:
- [ ] Statement Pursuant to Rule 2016(b)
- [ ] Official Form 201: [ ] Debtor's Name [ ] Debtor's Address [ ] Debtor's EIN [ ] Other Names used by the Debtor
  - [ ] Other

  _(Please indicate the Question # from Form 201 that is being amended and a brief description)_
- [ ] Official Form 201A: Ch. 11 Attachment to Voluntary Petition for Non-Individuals
- [ ] Official Form 202: Declaration Under Penalty of Perjury for Non-Individual Debtors
- [ ] Creditor Matrix
- [ ] Chapter 13 Plan (Pre-confirmation): [ ] Decrease Payments [ ] Increase Payments [ ] Increases length of plan
- [ ] Other:

_FOR CHANGES AFFECTING SCHEDULES D, E/ F, THE LIST OF CREDITORS, MATRIX OR MAILING LIST, PROCEED TO SECTION 'C' OF THIS FORM. OTHERWISE, PROCEED TO SECTION 'D'._

### C. CREDITOR/SCHEDULE INFORMATION: (Select either #1, #2 or #3)

- [ ] #1--Creditors are being added or deleted by this amendment/schedule, AND
  - [ ] The $31.00 amendment fee is attached
  - [ ] A matrix in the format prescribed by the Clerk with the complete names and addresses of the parties added is attached.
    Note: Do not repeat creditor information from a previously filed matrix. The Clerk's office will not delete creditors unless a motion to delete creditors is granted.

- [ ] #2--Schedule(s) of creditors (Schedules D, E/F), list of creditors, matrix or mailing list is being amended for purposes other than adding or deleting creditors.
  - [ ] The $31.00 fee is attached for this amendment [e.g. changing amount of a debt or classification of a debt].
  - [ ] The $31.00 fee does not apply for this amendment [e.g. change of address of a creditor or change of attorney].

- [x] #3 – **No Creditors** are being added or deleted.

### D. CERTIFICATION OF SERVICE, ATTORNEY'S DECLARATION AND DEBTOR'S UNSWORN DECLARATION

**CERTIFICATION OF SERVICE:** Attach an "Affidavit of Service" listing each party served with a copy of the referenced document(s), this cover sheet and a copy of the §341 Meeting Notice (if applicable). Be sure to include the U.S. Trustee and the Case Trustee.

**DECLARATION OF ATTORNEY** [Attorney or debtor(s), if pro se, must sign.]: I declare that the above information contained on this cover sheet may be relied upon by the Clerk of Court as a complete and accurate summary of the information contained in the documents attached.

Dated:   January 22, 2019          Signature:   /s/ Garry M. Graber, Esq.
                                                Garry M. Graber, Esq.

**DECLARATION OF DEBTOR(S)**: [Required if declaration is not completed on the document(s) itself or by separate instrument.]
I declare under penalty of perjury that I have read this cover sheet and the attached schedules, lists, statements, etc., consisting of 22 sheets, numbered 1 through 22, and that they are true and correct to the best of my knowledge, information and belief.

Dated:   January 22, 2019          Signature:   /s/ Michael K. Durkin          (debtor)
                                                Michael K. Durkin