**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| In Re: | Chapter 11 |
| TONAWANDA COKE CORPORATION, | Case No. 18-12156 |
| Debtor. | Hon. Carl L. Bucki, U.S.B.J. |

_____

**THIRD AMENDED PLAN OF LIQUIDATION**
**OF TONAWANDA COKE CORPORATION**

<br/>

**HODGSON RUSS LLP**
*Attorneys for the Debtor*
James C. Thoman, Esq.
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York   14202
Telephone:  (716) 856-4000
E-Mail:  jthoman@hodgsonruss.com

<br/>

Dated: Buffalo, New York
      November 15, 2024

**TABLE OF CONTENTS**

Page

ARTICLE I DEFINITIONS ........................................................................................... 1

ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS ..................................... 16

ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS ......................... 19

ARTICLE IV TREATMENT OF UNIMPAIRED CLAIMS ....................................... 20

ARTICLE V TREATMENT OF IMPAIRED CLAIMS .............................................. 20

ARTICLE VI TREATMENT OF EXECUTORY CONTRACTS
 AND UNEXPIRED LEASES.................................................................................... 22

ARTICLE VII IMPLEMENTATION OF THE PLAN ............................................... 23

ARTICLE VIII PROVISIONS GOVERNING DISTRIBUTIONS ............................. 32

ARTICLE IX INJUNCTION AND EXCULPATION ................................................. 42

ARTICLE X CONDITIONS TO CONFIRMATION AND OCCURRENCE
OF EFFECTIVE DATE............................................................................................. 46

ARTICLE XI MISCELLANEOUS PROVISIONS..................................................... 48

ARTICLE XII RETENTION OF JURISDICTION .................................................... 51

ARTICLE XIII CLOSING THE CASE ....................................................................... 54

Tonawanda Coke Corporation, the debtor and debtor in possession in this case (the "Debtor"), hereby proposes the following Third Amended Plan of Liquidation (the "Plan") for the Debtor's chapter 11 case pursuant to Sections 1121(a), 1122 and 1123 of title 11 of the United States Code (the "Bankruptcy Code").

## ARTICLE I

## DEFINITIONS

Unless the context otherwise requires (i) the terms set forth in this Article I shall have the following meanings when used in this Plan; (ii) any capitalized term that is used in this Plan and not defined in this Article I but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth therein; (iii) terms stated in the singular shall include the plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter; (v) all section, article and exhibit references in the Plan without reference to a particular document are to the respective section of, article of, or exhibit to the Plan; (vi) any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions except as otherwise stated in the Plan; (vii) any reference to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (viii) the words "herein", "hereof", "hereto" or "hereunder" and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (ix) the rules of construction set forth in Section 102 of the Bankruptcy Code shall govern construction of the Plan; and (x) any reference contained herein to

the Bankruptcy Code, or to any Section of the Bankruptcy Code, refers to the Bankruptcy Code, or such Section of the Bankruptcy Code, as it existed and was effective on the Petition Date, except to the extent, if any, that any post-Petition Date amendment to the Bankruptcy Code applies retroactively to cases filed on the Petition Date.

1.1     "**Administrative Bar Date**" means February 10, 2020 at 4:00 p.m., Eastern time, the date and time fixed by the Administrative Bar Date Order as the deadline for filing all Proofs of Administrative Claim.

1.2     "**Administrative Bar Date Order**" means the Order of the Bankruptcy Court dated January 15, 2020 [Docket No. 430] fixing the Administrative Bar Date.

1.3     "**Administrative Claim**" means a Claim for, or request for payment of, an Administrative Expense.

1.4     "**Administrative Expense**" means any cost or expense of administration of this Case, other than Bankruptcy Fees, allowable under Sections 503(b), 330 or 331 of the Bankruptcy Code.

1.5     "**Affinity**" means Affinity Insurance Ltd.

1.6     "**Allowed**" means, (a) any Claim that has been listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed; (b) any Claim, other than a Tort Claim, as to which no objection to allowance has been timely made in accordance with Section 502 of the Bankruptcy Code and Bankruptcy Rule 3007, pursuant to Section 8.4(a) of this Plan, or such other applicable period of limitation fixed by the Bankruptcy Court, or as to which any objection has been determined by

2

an Final Order but solely to the extent and in the amount such objection is determined in favor of the respective Creditor; (c) any Claim as to which, upon lifting of the automatic stay pursuant to Section 362 of the Bankruptcy Code, the liability of the Debtor, allowance and the amount of such Claim are determined by a Final Order of the Bankruptcy Court or, with respect to Tort Claims, a court of competent jurisdiction other than the Bankruptcy Court, or (d) any Claim expressly allowed pursuant to the Plan.

1.7 **"Assets"** means all assets of the Debtor of any nature whatsoever, including, without limitation, all property of the Estate pursuant to Section 541 of the Bankruptcy Code, Cash, Causes of Action, accounts receivable, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds from all of the foregoing.

1.8 **"Available Cash"** means, (a) as calculated on the Effective Date, all Cash of the Debtor less the amount of Cash estimated and reserved to: (i) fund the administration of the Plan (including the Expense Reserve), (ii) satisfy in full the Allowed Administrative Claims (excluding the EPA Supplemental Administrative Claim and the DOL Supplemental Administrative Claim), Allowed Priority Claims and Allowed Priority Tax Claims; and (iii) fund the General Unsecured Claim Initial Carveout; and (b) as calculated after the Effective Date, all Cash less the amount of Cash estimated and reserved to fund the continued administration of the Plan (including the Expense Reserve), if any.

1.9 **"Ballot"** means the ballots for Class 2 and Class 3 Claimants for accepting or rejecting the Plan.

1.10    "**Bankruptcy Code**" means title 11 of the United States Code, as amended from time to time and effective as to cases filed on the Petition Date.

1.11    "**Bankruptcy Court**" means the United States Bankruptcy Court for the Western District of New York or the United States District Court for the Western District of New York to the extent it withdraws the reference over all or any portion of this Case pursuant to Section 157(d) of title 28 of the United States Code.

1.12    "**Bankruptcy Fees**" mean all fees and charges assessed against the Estate under Section 1930 of title 28 of the United States Code.

1.13    "**Bankruptcy Rules**" mean (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Western District of New York, in either case, as amended from time to time and effective as to cases filed on the Petition Date.

1.14    "**Bar Date**" means the date fixed by Order of the Bankruptcy Court, subsequent to which a Proof of Claim may not be timely filed.

1.15    "**Business Day**" means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

1.16    "**Case**" means this case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court on the Petition Date and styled:  In re Tonawanda Coke Corporation, Case No. 18-12156.

Case 1-18-12156-CLB,   Doc 798,   Filed 11/15/24   Entered 11/15/24 15:44:10,
Description: Main Document  , Page 6 of 58

1.17 **"Cash"** means lawful currency of the United States of America.

1.18 **"Causes of Action"** means any and all claims, rights, and causes of action that could have been brought or can be brought now by or on behalf of the Debtor or the Estate arising before, on, or after the Petition Date, whether they are known or unknown, direct or indirect, reduced or not reduced to judgment, disputed or undisputed, suspected or unsuspected, in contract or in tort, at law or in equity or under any theory of law, including, but not limited to: (a) derivative claims; (b) rights of setoff or recoupment; and (c) claims on contracts or breaches of duty imposed by law.

1.19 **"Claim"** means:

(a)  a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(b)  a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.20 **"Class"** means a category of substantially similar Claims or Interests.

1.21 **"Committee"** means the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee on July 15, 2019 pursuant to Section 1102 of the Bankruptcy Code.

Case 1-18-12156-CLB,   Doc 798,   Filed 11/15/24,   Entered 11/15/24 15:44:10,
Description: Main Document  , Page 7 of 58

1.22    "**Confirmation**" means the entry of the Confirmation Order.

1.23    "**Confirmation Date**" means the date on which the Confirmation Order is entered by the Bankruptcy Court, provided that (i) the Confirmation Order becomes a Final Order and (ii) the Confirmation Order is not stayed by an Order of a court of competent jurisdiction.

1.24    "**Confirmation Order**" means an Order confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.25    "**Creditor**" means a holder of a Claim.

1.26    "**Cure Amount**" means any amount required, pursuant to Sections 365(b)(1)(A) and 365(b)(1)(B) of the Bankruptcy Code, to cure any defaults or compensate the non-debtor party to an Executory Contract or Unexpired Lease for any actual pecuniary loss resulting from a default in respect of an Executory Contract or Unexpired Lease.

1.27    "**Debtor**" means the above-captioned debtor and debtor in possession.

1.28    "**Disclosure Statement**" means the Disclosure Statement for the Plan of Liquidation for the Debtor (including all exhibits, attachments or amendments thereto), as the same may be amended, modified or supplemented from time to time, as approved by Order of the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

1.29    "**Disputed Claim**" means any Claim, in whole or in part, that (a) is listed in the Schedules as disputed, contingent or unliquidated and which has not been resolved by written agreement of the parties or by a Final Order; (b) is disputed in the Plan; (c) is subject to

6

an objection to the allowance thereof or request for estimation in accordance with Section 502(c) of the Bankruptcy Code, which has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been withdrawn or determined by a Final Order; and (d) was not timely or properly asserted by the Creditor thereof through the filing of a Proof of Claim as required by Order of the Bankruptcy Court or the Plan; provided however, that until the earlier of (i) the date on which such Claim is Allowed and (ii) the last date to file objections to Claims as established by the Plan or by Final Order, a Claim shall be deemed to be a Disputed Claim if, (A) the amount specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules, but solely to the extent of such excess amount; (B) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (C) no corresponding Claim has been listed in the Schedules.

1.30    "**Disputed Claim Reserve**" means the segregated account or accounts established by the Plan Administrator pursuant to Section 8.8 of the Plan to hold funds reserved for Creditors holding Disputed Claims other than Tort Claims as of the Effective Date.

1.31    "**Distribution Date**" means any date on which the Plan Administrator determines that a distribution, under or in accordance with the Plan, should be made to holders of Allowed Claims (or to a particular holder of an Allowed Claim).

1.32    "**DOL**" means the New York State Department of Labor.

1.33    "**DOL Supplemental Administrative Claim**" means the DOL Supplemental Allowed Administrative Expense Claim of the DOL as defined and described

7

under the EPA/DOL Settlement Agreement and Article II of the Plan, which shall be 6.3% of all Available Cash.

1.34    "**Effective Date**" means the first Business Day on which all conditions precedent to the effectiveness of the Plan as specified in Section 10.1 of the Plan shall have been satisfied or waived, and on which no stay of the Confirmation Order shall be pending.

1.35    "**EPA**" means the United States Environmental Protection Agency.

1.36    "**EPA/DOL Settlement Agreement**" means the Settlement Agreement entered into by and among the Debtor, the Committee, the EPA and the DOL which was approved by Order of the Bankruptcy Court dated December 15, 2020 [Docket No. 601].

1.37    "**EPA General Unsecured Claims**" means the Allowed General Unsecured Claims of the EPA which consists of (i) a Claim in the amount of $2,002,200 related to the EPA's Claims for stipulated penalties, which is referred to in the EPA/DOL Settlement Agreement as the "EPA Allowed Stipulated Penalty Claim" and (ii) a Claim in the amount of $11,826.14 related to pre-petition response costs incurred on behalf of the EPA, which is referred to in the EPA/DOL Settlement Agreement as the "EPA Allowed Pre-Petition Response Cost Claim".

1.38    "**EPA Supplemental Administrative Claim**" means the EPA Supplemental Allowed Administrative Expense Claim of the EPA as defined and described under the EPA/DOL Settlement Agreement and Article II of the Plan, which shall be 83.7% of all Available Cash.

8

1.39    "**Estate**" means the estate created on the Petition Date pursuant to Section 541 of the Bankruptcy Code.

1.40    "**Exculpated Entity**" means, individually and collectively, the Debtor, the members of the Committee (solely in their capacities as members of the Committee), and each of their respective directors, officers, shareholders, members, partners, agents, employees, representatives, attorneys and other professionals, subsidiaries and affiliates, and any successor in interest in any of them, acting solely in their capacity as fiduciaries of the Debtor from and after the Petition Date.

1.41    "**Executory Contract**" means a contract to which the Debtor is a party that is subject to assumption, assumption and assignment, or rejection under Sections 365 or 1123 of the Bankruptcy Code.

1.42    "**Expense Reserve**" means a reserve to be established by the Debtor on the Effective Date to be utilized by the Plan Administrator to effectuate the liquidation of the remaining Assets hereunder, including, without limitation, to fund any necessary or appropriate litigation against third parties, in accordance with the Plan.   The Plan Administrator may replenish the Expense Reserve from available Cash on hand from time to time as determined by the Plan Administrator in its reasonable discretion.   Any reference to the establishment or maintenance of any reserves contained in the Plan, including the Disputed Claims Reserve, Tort Claims Reserve and the Expense Reserve, will not require the Plan Administrator to establish separate deposit or similar accounts for such reserves.   The establishment of reserves under the Plan may be accomplished by accounting, general ledger, paper, or other book entry, as the Plan Administrator may determine.

9

1.43　　"**Final Decree**" means the final decree contemplated under Bankruptcy Rule 3022 closing a case under Chapter 11 of the Bankruptcy Code.

1.44　　"**Final Order**" means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal located in one of the states, territories or possessions of the United States or the District of Columbia, that has not been stayed or that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending; provided, however, that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

1.45　　"**General Unsecured Claim**" means any unsecured, non-priority Claim against the Debtor that is not an Administrative Claim or Priority Tax Claim, and includes any Claim based upon any deductible and self-insured retention amounts under the Debtor's insurance policies, which are not otherwise covered under the Debtor's insurance policies.

1.46　　"**General Unsecured Claim Initial Carveout**" means the amount of $200,000.00 set aside for the benefit of holders of General Unsecured Claims pursuant to the EPA/DOL Settlement Agreement.

1.47　　"**General Unsecured Claim Supplemental Carveout**" means an amount equal to ten percent (10%) of the Available Cash.

1.48　**"Governmental Unit"** means the United States, department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

1.49　**"Insider"** means an insider of the Debtor as determined in accordance with Section 101(31) of the Bankruptcy Code.

1.50　**"Insider Claim"** means an Allowed Claim held by or behalf of an Insider or any successor in interest or assignee thereof.

1.51　**"Interest"** means any equity interest or proxy related thereto, direct or indirect, in the Debtor, and represented by duly authorized, validly issued, and outstanding shares of preferred stock or common stock, stock appreciation rights, membership interests, partnership interests, or any other instrument evidencing a present ownership interest, direct or indirect, inchoate or otherwise, in the Debtor, or right to convert into such an equity interest or acquire any equity interest of the Debtor, whether or not transferable, or an option, warrant, or right, contractual or otherwise, to acquire any such interest, which was in existence prior to or on the Petition Date.

1.52　**"Legal Holiday"** means a Legal Holiday as that term is defined in Bankruptcy Rule 9006(a).

1.53　**"Lien"** means lien as defined in Section 101(37) of the Bankruptcy Code.

Case 1-18-12156-CLB,　Doc 798,　Filed 11/15/24,　Entered 11/15/24 15:44:10,
Description: Main Document , Page 13 of 58

1.54   "**Non-Tort Claim Assets**" means Cash equal to (i) the General Unsecured Claim Initial Carveout *plus* (ii) the General Unsecured Claim Supplemental Carveout *minus* (iii) the Cash set aside for the Tort Claims Reserve.

1.55   "**Order**" means an order of the Bankruptcy Court or other court of competent jurisdiction.

1.56   "**Petition Date**" means October 15, 2018, the date on which the Debtor commenced this Case by the filing of its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

1.57   "**Plan**" means this Plan of Liquidation for the Debtor, as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

1.58   "**Plan Administrator**" If the Debtor does not serve as Plan Administrator it means the person identified in a supplement to the Plan, or other filing with the Bankruptcy Court, who shall be reasonably acceptable to the Committee, and retained as of the Effective Date pursuant to the Plan Administrator Agreement, as the employee or fiduciary responsible for implementing the applicable provisions of the Plan.

1.59   "**Plan Administrator Agreement**" means an agreement, to be entered into as of the Effective Date, by the Debtor and the Plan Administrator, which sets forth, among other things, the duties and compensation of the Plan Administrator.

Case 1-18-12156-CLB,   Doc 798,   Filed 11/15/24,   Entered 11/15/24 15:44:10,
Description: Main Document , Page 14 of 58

1.60     "**Priority Claim**" means that portion of a Claim other than a Priority Tax Claim, an Administrative Claim, a Secured Claim or Bankruptcy Fees, to the extent entitled to priority under Section 507 of the Bankruptcy Code.

1.61     "**Priority Tax Claim**" means an Allowed Claim of a Governmental Unit of the kind specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.62     "**Professional**" means (i) all professionals employed by the Debtor under Sections 327, 328, 1102 or 1104 of the Bankruptcy Code and (ii) any professional or other entity seeking compensation or reimbursement of expenses in connection with the chapter 11 cases pursuant to Section 503(b)(4) of the Bankruptcy Code.

1.63     "**Professional Fees**" means compensation for services rendered, and reimbursement of expenses incurred by Professionals as awarded by Final Order following application in accordance with Sections 330 and 331 of the Bankruptcy Code.

1.64     "**Proof of Administrative Claim**" means a request for payment of an Administrative Expense filed pursuant to the terms of the Administrative Bar Date Order.

1.65     "**Proof of Claim**" means a proof of claim filed pursuant to Section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.66     "**Pro Rata**" means the proportion that an Allowed Claim in a particular Class, or allocated to the Reserve on behalf of a holder of a Disputed Claim in a Class, bears to the aggregate amount of all Allowed Claims in such Class or allocated to the Reserve on behalf of all holders of Disputed Claims in such Class.

13

1.67    **"Releasing Entity"** means each of the following in its capacity as such: (a) those holders of Claims that are unimpaired and deemed to accept the Plan as provided in Section 9.3; (b) all holders of Claims who vote to accept the Plan; (c) all holders of Claims who either (i) vote to reject the Plan, or (ii) abstain from voting to accept or reject the Plan; (d) with respect to each of the foregoing entities in clauses (a), (b) and (c), such entity's current and former managed and controlled affiliates, and such entity's and its affiliates' subsidiaries, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; and (e) each of the Debtor's current and former affiliates, and each of the Debtor's and its current and former affiliates' subsidiaries, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

1.68    **"Reserve"** means, as to all Disputed Claims other than Tort Claims, the Disputed Claims Reserve, and as to all Tort Claims, the Tort Claims Reserve.

1.69    **"Schedules"** mean the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court in accordance with Section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules, as such Schedules may be amended from time to time.

1.70    **"Secured Claim"** means an Allowed Claim, including all amounts, if any, allowed pursuant to Section 506(b) of the Bankruptcy Code, to the extent that it is secured by a valid, perfected and enforceable lien on any Asset of the Debtor or that is subject to set-off under Section 553 of the Bankruptcy Code, solely to the extent of the value of the Creditor's secured

14

interest in such Assets or to the extent of the amount subject to set-off, as applicable, as determined pursuant to Section 506(a) of the Bankruptcy Code.

1.71    **"Substantial Consummation"** means the completion of the duties and obligations of the Plan Administrator, including the completion of all payments to be made under the Plan and preparation of the application for the Final Decree (including an accounting of all funds received by the Plan Administrator and their disposition).

1.72    **"Tort Claim"** means any Claim that has not been compromised and settled or otherwise resolved (a) relating to personal injury, wrongful death, property damage, products liability, or other similar Claim asserted against the Debtor or (b) arising under any federal, state or local statute, rule regulation or ordinance governing, regulating or relating to health, safety, hazardous substances or the environment, including, in each case, unasserted or other intangible Claims.

1.73    "**Tort Claims Allowance Deadline**" has the meaning ascribed to such term in Section 8.4(g).

1.74    **"Tort Claims Assets**" means an amount equal to fifty percent (50%) of funds comprising the General Unsecured Claim Initial Carveout and the General Unsecured Claim Supplemental Carveout.

1.75    **"Tort Claims Reserve"** means the segregated account or accounts established by the Plan Administrator pursuant to Section 8.8 of the Plan to hold funds reserved for Creditors holding Tort Claims that become Allowed Claims after the Effective Date.

15

1.76     **"Transfer Tax"** means tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax.

1.77     **"Unexpired Lease"** means a nonresidential lease to the Debtor is a party that is subject to assumption, assumption and assignment, or rejection under Section 365 or 1123 of the Bankruptcy Code, or may be amended by mutual agreement of the parties thereto.

## ARTICLE II

### TREATMENT OF UNCLASSIFIED CLAIMS

2.1     Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims or Priority Tax Claims.  Such Claims, to the extent they are Allowed Claims, shall receive the treatment provided in this Article II in full satisfaction and release thereof.

2.2     **Administrative Claims in General.**  Subject to the provisions of Section 8.4 of the Plan with respect to Disputed Claims, each Allowed Administrative Claim, to the extent not previously paid, shall be paid by the Plan Administrator in full in Cash on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three business days after such Claim becomes an Allowed Administrative Claim or (ii) on a date otherwise mutually agreed upon in writing between the Plan Administrator and the holder of such Claim (including, but not limited to, the EPA Supplemental Administrative Claims and DOL Supplemental Administrative Claims which are governed by the terms of the EPA/DOL Settlement Agreement); provided, however, that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full or

16

performed by the Debtor in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

2.3 **Administrative Bar Date**. Pursuant to the Administrative Bar Date Order, holders of Administrative Claims against the Debtor that arose on or prior to 11:59 p.m., Eastern Time on December 31, 2019 were required to file a Proof of Administrative Claim on or before the Administrative Bar Date of February 10, 2020 to receive payment from the Debtor unless expressly exempted. Holders of such Administrative Claims that did not timely file a Proof of Administrative Claim on or before the Administrative Bar Date are forever barred from asserting such Administrative Claim against the Debtor or its Assets; provided, however, that holders of Claims for Administrative Expenses arising in the ordinary course of the Debtor's business need not file a Proof of Administrative Claim. Administrative Claims that arose after 11:59 p.m., Eastern Time on December 31, 2019 must be filed no later than thirty (30) days following the Effective Date pursuant to the filing procedures set forth in the Administrative Bar Date Order.

2.4 **Administrative Claims Pursuant to EPA/DOL Settlement Agreement.** The EPA/DOL Settlement Agreement provides that the EPA shall receive an Allowed Administrative Claim consisting of: (a) an initial $930,000.00 Claim (the "Initial EPA Administrative Claim"), which Claim has been satisfied by the Debtor, and (b) a supplemental Allowed Administrative Claim equal to 83.7% of all Available Cash on the Effective Date.

2.5 The EPA/DOL Settlement Agreement further provides that the DOL shall receive an Allowed Administrative Claim consisting of: (a) an initial $70,000 Claim (the "Initial DOL Administrative Claim"), which Claim has been satisfied by the Debtor, and (b) a

supplemental Allowed Administrative Claim equal to 6.3% of all Available Cash on the Effective Date.

2.6     The EPA Supplemental Administrative Claim and the DOL Supplemental Administrative Claim are Allowed Administrative Claims and shall receive the same initial treatment as all other Allowed Administrative Claims pursuant to Section 2.2 above.

2.7     If after payment of all amounts contemplated under this Plan to be paid on or immediately after the Effective Date, there is additional Available Cash received by the Plan Administrator, the EPA shall receive 83.7% of such Available Cash and the DOL shall receive 6.3% of such Available Cash; provided, however, that in no event shall (i) the EPA receive for its EPA Supplemental Administrative Claim an amount in excess of $5,531,521.10[1] minus the Initial EPA Administrative Claim and (ii) the DOL receive for its DOL Supplemental Administrative Claim an amount in excess of $1,518,651.38[2] minus the Initial DOL Administrative Claim.

2.8     **Professionals' Compensation and Reimbursement**.  All Professionals shall file final applications for approval of Professional Fees pursuant to Section 330 of the Bankruptcy Code no later than sixty (60) days following the Effective Date.  Any such application timely filed shall be deemed to be a Proof of Administrative Claim.  No later than three (3) days prior to the Effective Date, each such Professional shall provide the Plan

---

[1] 11.    This amount reflects the amount asserted by the EPA as its Administrative Claim for costs incurred after the Petition Date addressing releases and threatened releases of hazardous substances at the Debtor's site under the Motion for Allowance of Administrative Expense Claim, [Docket No. 282] which was amended [Docket No. 442].

[2]    This amount reflects the amount asserted by the DOL as its Administrative Claim under Proof of Claim No. 103-1.

18

Administrator with an estimate of the total amount of compensation and expenses for which such Professional expects to seek final compensation pursuant to Section 330 of the Bankruptcy Code. Such estimates shall include estimated sums for the preparation and prosecution of any such application. Unless otherwise agreed by such claim holder in writing, on the Effective Date the Plan Administrator shall segregate sufficient Cash to pay all such estimated compensation and expenses in full. Objections to any Professional's application for compensation or reimbursement must be filed and served upon such Professional and the Plan Administrator no later than fifteen (15) days after such Professional files its final application for Professional Fees. Any such objection not timely filed and served shall be deemed to have been waived.

       2.9    **Priority Tax Claims**.  Subject to the provisions of Section 8.4 of the Plan with respect to Disputed Claims, in full satisfaction and release of Priority Tax Claims, and except as may be otherwise mutually agreed in writing between the Debtor and such Governmental Units, all Priority Tax Claims shall be paid by the Plan Administrator in Cash in full on the Effective Date.

       2.10    **Bankruptcy Fees**.  All Bankruptcy Fees shall be paid by the Plan Administrator in Cash in full as required by statute on the Effective Date.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

       Except as otherwise provided in Article II, Allowed Claims are classified as set forth in this Article III. A Claim is in a particular Class designated herein only to the extent such Claim (i) fits within the description of such Class (and is in such other and different Class or

Classes to the extent that the remainder thereof fits within the description of such other Class or Classes) and (ii) has not been paid, released or otherwise satisfied prior to the Effective Date.

3.1    **Class 1 - Priority Claims**.  Class 1 consists of all Priority Claims.

3.2    **Class 2 –General Unsecured Claims**.  Class 2 consists of all General Unsecured Claims including the EPA General Unsecured Claim but excluding Tort Claims.

3.3    **Class 3 –Tort Claims.**  Class 3 consists of the Tort Claims, all of which are currently Disputed Claims.

3.4    **Class 4 - Interests**.  Class 4 consists of holders of Interests in the Debtor.

## ARTICLE IV

## TREATMENT OF UNIMPAIRED CLAIMS

4.1    **Class 1 - Priority Claims**.  Allowed Claims in Class 1 are not impaired and are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.  Subject to the provisions of Section 8.4 of the Plan with respect to Disputed Claims, in full satisfaction and release of the Priority Claims, the holders of Priority Claims shall receive the following treatment:  on the Effective Date, or as soon as practicable after such Claims become Allowed Claims, each holder of a Priority Claim shall receive payment from the Plan Administrator (i) in Cash, in the full amount of its Priority Claim, or (ii) as may be otherwise agreed in writing between the Debtor and the holder of such Priority Claim.

## ARTICLE V

## TREATMENT OF IMPAIRED CLAIMS

20

Allowed Claims and Interests in Classes 2 and 3 are impaired and shall receive the following treatment under the Plan.

5.1 **Class 2 –General Unsecured Claims**. Class 2 Claims are impaired and entitled to vote to accept or reject the Plan. Class 2 consists of General Unsecured Claims including the EPA General Unsecured Claim but excluding all Tort Claims. Unless otherwise agreed to by the holder of such Claim 2 Claim, on the later of (a) the Effective Date, or as soon thereafter as reasonably practicable and (b) for Disputed Claims, the date on which such Claim becomes an Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim will receive a Pro Rata distribution of (i) the General Unsecured Claim Initial Carveout and (ii) the General Unsecured Claim Supplemental Carveout, in each case, minus the amount of Cash set aside for the Tort Claims Reserve.

If after payment of all amounts contemplated under this Plan to be paid on or immediately after the Effective Date, there is additional Available Cash received by the Plan Administrator, the Class 2 Creditors holding Allowed General Unsecured Claims shall receive a Pro Rata distribution of ten (10%) of such additional Available Cash, if any, from the Plan Administrator.

5.2 **Class 3 - Tort Claims.** Class 3 Claims are impaired and entitled to vote to accept or reject the Plan. Class 3 Claims consists of the Tort Claims all of which are currently Disputed Claims. Subject to Plan Section 8.4(g), any Tort Claim as to which a Proof of Claim was timely filed will be determined and liquidated either in the administrative or judicial tribunal in which it is pending on the Effective Date, or if no action is pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction, or in accordance with any

21

alternative dispute resolution or similar proceedings as the same may be approved by Order of the Bankruptcy Court. The Debtor reserves the right to seek estimation of any and all Tort Claims in a court or courts of competent jurisdiction. To the extent that a Tort Claim is determined and liquidated pursuant to a final, nonappealable judgment in such a tribunal or in any such alternative dispute resolution or similar proceeding, such Tort Claim shall be deemed an Allowed Class 3 Claim and be satisfied from a Pro Rata distribution from the Tort Claims Reserve.

5.3 **Class 4 – Interest Holders**. Class 4 Claims are impaired and Interest holders are conclusively deemed to reject the Plan under Section 1126(g) of the Bankruptcy Code and are therefore not entitled to vote to accept or reject the Plan. On the Effective Date, Interests shall be deemed cancelled, and the holders of Interests shall not receive or retain any property under the Plan on account of such Interests.

## ARTICLE VI

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1 **Rejection of Executory Contracts and Unexpired Leases**. On the Effective Date, all Executory Contracts and Unexpired Leases to which the Debtor is a party shall be deemed rejected. Notwithstanding anything to the contrary contained herein, Affinity shall remain obligated to make annual distributions to the Debtor or Plan Administrator (as applicable) pursuant to the Bankruptcy Court's Order dated November 8, 2022 [Docket No. 684].

6.2 **Rejection Claims**. Subject to the provisions of Section 8.4 of the Plan with respect to Disputed Claims, Allowed Claims arising from the rejection of Executory

22

Contracts and Unexpired Leases of the Debtor pursuant to Section 6.1 of the Plan shall be treated as General Unsecured Claims.

6.3 **Bar to Rejection Claims**. A Proof of Claim with respect to any General Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to Section 6.1 of the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtor within thirty (30) days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a different date on which a Proof of Claim must be timely filed and served), or (ii) the Effective Date. Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor, or its successors or their respective properties.

## ARTICLE VII

## IMPLEMENTATION OF THE PLAN

7.1 **Implementation**. The Debtor and the Plan Administrator shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan. The Confirmation Order shall contain appropriate provisions, consistent with Section 1142 of the Bankruptcy Code, directing the Debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property required by the Plan and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan. Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan or the sale shall not be subject to Transfer Tax.

23

7.2     **Plan Funding**.  In order to fund the distributions under the Plan, the Debtor sold substantially all of its Assets during the pendency of this Case.  The Debtor has also obtained an Order from the Bankruptcy Court requiring Affinity to make future distributions to the Debtor in connection with its preferred shares.  As further set forth in the Debtor's Motion Pursuant To Bankruptcy Rule 9019 To Approve Settlement With Affinity Insurance Ltd [Docket No. 679], the Affinity distributions should occur annually through 2026 and are anticipated to be approximately $1,100,000 for the period from 2022 through 2026, of which half will be distributed to the Debtor.  The Committee, on behalf of the Debtor's Estate, has also recovered $200,000.00 pursuant to a Settlement Agreement related to a fraudulent conveyance action against one of the Debtor's affiliates and certain insiders commenced as *Official Committee of Unsecured Creditors of Tonawanda Coke Corporation vs. Tamroy, Inc., James Crane, as Executor of the Estate of James Donald Crane, Robert A. Bloom, Michael K. Durkin & Paul A. Saffrin*, A.P. No. 1-20-1044-MJK. This settlement resolved and provided a release of the Estate's potential claims against the named defendants.

7.3     **Vesting of Assets**.  Except as otherwise provided in the Plan, on the Effective Date pursuant to the provisions of Section 1141(b) and (c) of the Bankruptcy Code, the Assets shall vest in the Debtor free and clear of all Liens, Claims and encumbrances that have not been expressly preserved under the Plan or the Confirmation Order and all Assets transferred (i) by the Debtor or (ii) by any non-debtor third party to a Creditor in accordance with the terms of the Plan shall be, as of the Effective Date, deemed to be free and clear of all Liens, Claims and encumbrances and any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.

24

7.4 **Plan Payments**. Except as set forth elsewhere in the Plan, all payments required to be made under the Plan shall be made by the Plan Administrator in accordance with the terms of the Plan and the Confirmation Order. Except as set forth elsewhere in the Plan, all distributions to be made shall be funded from Cash on hand and future distributions from Affinity.

7.5 **Transfer Taxes**. (a) If applicable, pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan shall be exempt and shall not be subject to Transfer Tax, and, to the extent provided by Section 1146 of the Bankruptcy Code, if any, shall not be subject to any state, local or federal law imposing sales tax.

(b) If applicable, pursuant to Section 1142(b) of the Bankruptcy Code, the Confirmation Order shall direct the clerk's office to record any recordable document executed in connection with the consummation of the Plan, without the payment of Transfer Taxes. Any applicable Clerk or Register's Office in the State of New York or its municipalities and counties shall record any recordable document executed in connection therewith without the payment of any Transfer Taxes.

7.6 **Execution of Documents**. (a) On the Effective Date, the Debtor and any necessary party thereto, shall execute, release, and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan.

(b) Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtor and the Plan Administrator shall be authorized to execute, in the name of any necessary party, any estoppel certificate, or any notice of satisfaction, release or discharge of any

25

Lien, Claim or encumbrance (including any Lien, Claim or encumbrance that is to be released and satisfied upon Debtor's compliance with the provisions of Article V of the Plan) not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

7.7    **Filing of Documents**.  Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

7.8    **Preservation of Causes of Action**.  Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Debtor shall retain, and on the Effective Date shall be deemed to have assigned to the Plan Administrator or its designee, who may, in accordance with its determination of the best interest of the Estate, enforce any Claims, rights and Causes of Action, including but not limited to Causes of Action arising under Sections 510 and 544 through 550 of the Bankruptcy Code or any similar provisions of state law, or any statute or legal theory.

7.9    **Notice of Effective Date.** Not later than three (3) Business Days following the Effective Date, the Debtor shall file a notice of the occurrence of the Effective Date of the Plan in accordance with the Bankruptcy Rules and orders of the Bankruptcy Court.

Case 1-18-12156-CLB,    Doc 798,    Filed 11/15/24,    Entered 11/15/24 15:44:10,
Description: Main Document  , Page 28 of 58

7.10    **Resignation of Directors and Officers.** Upon the Effective Date, the Debtor's board of directors and officers shall be deemed to have resigned without the necessity of any further action or writing, and they shall be released from responsibilities, duties, and obligations arising after the Effective Date to the Debtor or its Creditors under the Plan and applicable law, provided, that they shall provide reasonable cooperation and assistance as may be requested by the Plan Administrator.

7.11    **Withholding Taxes.** The Plan Administrator shall not be required to withhold taxes or comply with any applicable reporting requirements. The recipients of distributions will be required to comply with all applicable laws and regulations concerning the reporting and taxing of the distributions. If requested by the recipient of a distribution, the Plan Administrator will issue an IRS Form 1099.

7.12    **Request for Expedited Determination of Taxes.** The Debtor or the Plan Administrator, as applicable, shall have the right to request an expedited determination under Section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

7.13    **Dissolution of Creditors' Committee**. On the Effective Date, the Committee shall be deemed dissolved and all Committee members, professionals, employees, or agents thereof shall be released and discharged from all rights and duties arising from or related to the Case, except to the extent necessary to prosecute any appeals or other matters with respect to which they have been granted standing. The Debtor or Plan Administrator shall not be responsible for paying any fees or expenses incurred by Committee members or Committee professionals after the Effective Date.

27

7.14    **Corporate Action.** The Plan will be administered by the Plan Administrator and all actions taken under the Plan in the name of the Debtor shall be taken through the Plan Administrator. Upon the distribution of all Assets pursuant to the Plan and the filing by the Plan Administrator of a certification to that effect with the Bankruptcy Court (which may be included in the application for the entry of the Final Decree), the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to therewith, provided, however, that the Debtor may, but will not be required to, take appropriate action to dissolve under applicable law. The Debtor shall not issue non-voting equity securities.

7.15    **Appointment of the Plan Administrator**. On the Effective Date, the Plan Administrator shall be deemed the Estate's representative in accordance with Section 1123 of the Bankruptcy Code and shall have all powers, authority, and responsibilities specified in the Plan, including, without limitation, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code. On the Effective Date, unless notice of the appointment of a third party has been filed with the Court, the Debtor shall serve as Plan Administrator.

7.16    **Powers and Duties of the Plan Administrator**. The Plan Administrator will act for the Debtor in a fiduciary capacity, subject to the provisions of the Plan and the Plan Administrator Agreement. The powers and duties of the Plan Administrator shall include, without limitation:

> (a)    investing Cash in accordance with Section 345 of the Bankruptcy Code, and withdrawing and making distributions of Cash to holders of Allowed Claims and paying taxes and other obligations owed by the

28

Debtor or incurred by the Plan Administrator in connection with winding down the Estate, from the Expense Reserve and Available Cash in accordance with the Plan;

(b)     engaging attorneys, consultants, agents, employees, and any other professional persons to assist the Plan Administrator with respect to the Plan Administrator's responsibilities;

(c)     executing and delivering all documents and taking all actions necessary to consummate the Plan and wind up the Debtor's business;

(d)     coordinating the turnover of property, if any, subject to rejected executory contracts or abandonment or liquidation of any retained assets;

(e)     coordinating the collection of outstanding accounts receivable;

(f)     coordinating the storage and maintenance of the Debtor's books and records;

(g)     overseeing compliance with the Debtor's accounting, finance, and reporting obligations;

(h)     payment of quarterly fees and preparing financial statements and US Trustee post-confirmation quarterly reports, until such time as a Final Decree has been entered;

(i)     overseeing the filing of final tax returns, refund requests, audits, and other corporate dissolution documents, as required;

(j)     performing any additional corporate actions as necessary to carry out the wind up and liquidation of the Debtor;

(k)     paying the fees and expenses of the attorneys, consultants, agents, employees, and other professional persons engaged by the Debtor and the Plan Administrator and to pay all other expenses for winding down the affairs of the Debtor, subject to the terms of the Plan;

(l)     disposing of, and delivering title to others of, or otherwise realizing the value of, all the remaining Assets in a commercially reasonable manner;

(m)     objecting to, compromising, and settling Claims;

(n)     acting on behalf of the Debtor in all adversary proceedings and contested matters (including, without limitation, any Causes of Action), then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, dispute, or adjust any claim and otherwise pursue actions involving the Debtor's Assets that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise waived or relinquished in the Plan;

(o)     implementing and/or enforcing all provisions of the Plan; and

(p)     such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Plan, Plan Administrator Agreement, or other Order of the Bankruptcy Court, or as may be needed or appropriate to carry out the provisions of the Plan.

7.17    **Plan Administrator Agreement**. If the Plan Administrator is not the Debtor, on the Effective Date, the Plan Administrator Agreement shall be deemed to be valid,

30

binding, and enforceable in accordance with its terms and provisions. After the Effective Date, the Plan Administrator Agreement may be amended in accordance with its terms without further order of the Court. If the Plan Administrator is not the Debtor, the Plan Administrator Agreement shall be filed with the Court as a supplement to the Plan.

7.18 **Resignation or Removal of Plan Administrator.** If the Plan Administrator resigns or is removed, dies, dissolves, or is incapacitated, the Bankruptcy Court shall designate another Person to become the Plan Administrator and thereupon the successor Plan Administrator, without further act, shall become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor, including the compensation of the predecessor Plan Administrator. No successor Plan Administrator hereunder shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors.

7.19 **No Agency Relationship.** The Plan Administrator shall not be deemed to be the agent for any of the holders of Claims in connection with the funds held or distributed pursuant to the Plan. The Plan Administrator shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless it constitutes gross negligence or willful misconduct or breach of fiduciary duty. The Plan Administrator shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Estate against any and all claims arising out of his or her duties under the Plan, except to the extent his or her actions constitute gross negligence or willful misconduct or breach of fiduciary duty. The Plan Administrator may conclusively rely, and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which he or she believes to be genuine and to have been signed or presented by the proper party or parties. The Plan Administrator may rely

31

upon information previously generated by the Debtor and such additional information provided to him or her by former employees of the Debtor.

7.20 **Retention of Professionals**. The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other Professionals that are necessary to assist the Plan Administrator in the performance of its duties as Plan Administrator or otherwise under this Plan. The reasonable fees and expenses of such professionals and the additional expenses of the Plan Administrator incurred in the performance of its duties as Plan Administrator under this Plan shall be paid by the Plan Administrator from the Expense Reserve, and shall not be subject to the approval of the Bankruptcy Court.

## ARTICLE VIII
## PROVISIONS GOVERNING DISTRIBUTIONS

8.1 **Estimation of Claims.** The Plan Administrator may, at any time, request that the Bankruptcy Court (or the District Court, if applicable) estimate any Claim not expressly Allowed by the terms of the Plan and otherwise subject to estimation under Section 502(c) of the Bankruptcy Code a Claim for which the Debtor may be liable under the Plan, including any Claim for taxes, to the extent permitted by Section 502(c) of the Bankruptcy Code, regardless of whether any party in interest previously objected to such Claim, and the Bankruptcy Court (or the District Court, if applicable) will retain jurisdiction to estimate any Claim pursuant to Section 502(c) of the Bankruptcy Code at any time prior to the time that such Claim becomes an Allowed Claim. If the Bankruptcy Court (or the District Court, if applicable) estimates any contingent or unliquidated Claim, the estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy

Court (or the District Court, if applicable). The foregoing objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated by the Bankruptcy Court (or the District Court, if applicable) and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court (or the District Court, if applicable).

8.2     **No Recourse**. Notwithstanding that the Allowed amount of any particular Disputed Claim may be reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or Allowed in an amount for which, after application of the payment priorities established by the Plan, there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Debtor, the Estate, the Plan Administrator, or any of their respective professionals, consultants, officers, directors, or members or their successors or assigns, or any of their respective property. Except as specifically stated otherwise in the Plan, nothing in the Plan shall modify any right of a holder of a Claim under Section 502(j) of the Bankruptcy Code.

THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THIS PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS IF THE ESTIMATION IS MADE SOLELY FOR THE PURPOSE OF ESTIMATING A MAXIMUM LIABILITY FOR RESERVE PURPOSES, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

8.3     **Automatic Disallowance and Expungement of Certain Claims**. On the Effective Date, all Claims filed after the applicable Bar Date that were required to be filed on or

in advance of such Bar Date under its terms, shall be expunged and disallowed without any further notice to or action, order, or approval of the Bankruptcy Court.

8.4    **Disputed Claims**.

(a)    **Objections to Claims**. Unless otherwise ordered by the Bankruptcy Court, on and after the Effective Date, the Plan Administrator shall have the right to make, file, and prosecute objections to and settle, compromise, or otherwise resolve Disputed Claims, except that as to applications for allowances of Professional Fee Claims, objections may be made in accordance with the applicable Bankruptcy Rules by parties in interest. Subject to further extension by the Bankruptcy Court, the Plan Administrator shall file and serve a copy of any such objection upon the Creditor to which an objection is made on or before the latest to occur of: (i) 60 days after the Effective Date, (ii) 60 days after a request for payment or Proof of Claim is timely filed and properly served upon the Plan Administrator, and (iii) such other date as may be fixed by the Bankruptcy Court either before or after the expiration of such time periods. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the Plan Administrator effects service in any of the following manners (x) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (y) by first-class mail, postage prepaid, on the signatory of the Proof of Claim or other representative identified in the Proof of Claim or any attachment thereto at the address of the Creditor set forth therein; or (z) by first-class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in this Case.  For avoidance of doubt, all Tort Claims shall be considered Disputed Claims without any further action of the Plan Administrator to object to or otherwise dispute such Tort Claims.

34

(b)     **Resolution of Disputed Claims**. From and after the Effective Date, the Plan Administrator may settle or compromise any Disputed Claim (including any Tort Claim) or retained Cause of Action pursuant to the terms of the Plan without further order of the Bankruptcy Court.  Notwithstanding the foregoing, no Distribution or payment shall be made on account of a Disputed Claim until such Disputed Claim becomes an Allowed Claim.

(c)     **Automatic Allowance of Certain Claims**.  Any Claim (other than those related to Tort Claims) that is not a Disputed Claim on or prior to the expiration of the deadline for filing Claim objections set forth above shall automatically be deemed to be an Allowed Claim without any further notice to or action, order, or approval of the Bankruptcy Court.

(d)     **Establishment of Reserve Accounts**.  As further set forth in Section 8.9(a), on or before the Effective Date, the Debtor shall establish and fund the Disputed Claims Reserve for non-Tort Claims and the Tort Claims Reserve for all Tort Claims, each of which shall be administered by the Plan Administrator.

(e)     **Duties in Connection with Disputed Claims.** On and before the Effective Date, the Debtor, and after the Effective Date, Plan Administrator shall (i) deposit in the Disputed Claims Reserve, Cash in an amount required by order of the Bankruptcy Court or the District Court, if applicable, (including any order estimating the maximum liability of a Disputed Claim) or, in the absence of such order, Cash equal to the Distributions that would have been made to the holder of such Disputed Claim, if it were an Allowed Claim in a liquidated amount, if any, on the Effective Date (ii) object to, settle, or otherwise resolve Disputed Claims, (iii) make distributions to holders of Disputed Claims that subsequently become Allowed Claims

35

in accordance with the Plan, and (iv) distribute any remaining assets of the Disputed Claims Reserve, after resolving all Disputed Claims.

(f) **Distributions when Disputed Claim Is Resolved**. On the next Distribution Date following the date upon which a Disputed Claim is ultimately Allowed, the holder of such Claim shall receive from the Disputed Claims Reserve any amounts attributable to such Claim, in accordance with the Plan. Any Cash distributions held in the Disputed Claims Reserve for the benefit of a holder of a Disputed Claim, which is subsequently disallowed, in whole or in part, by Final Order shall be distributed pro-rata to the holders of Allowed General Unsecured Claims.

(g) **Tort Claims.** **Holders of Tort Claims shall have twelve (12) months from the Effective Date to have the liability of the Debtor determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court unless such period is otherwise extended by: (i) written agreement of the Plan Administrator and holder of the Tort Claim or (ii) pursuant to a Final Order of the Bankruptcy Court following a motion scheduling such extension on notice to the Plan Administrator (such date being the "Tort Claim Allowance Deadline"). If a holder of a Tort Claim does not have the Debtor's liability determined by a Final Order of a court of competent jurisdiction on or prior to the Tort Claim Allowance Deadline, such Tort Claim shall automatically be disallowed and all liability of the Debtor with respect to such Tort Claims are deemed satisfied and released without further action by the Plan Administrator or an Order of the Bankruptcy Court.**

36

Any amounts remaining in the Tort Claims Reserve following the expiration of the Tort Claim Allowance Deadline shall be distributed by the Plan Administrator to holders of Allowed General Unsecured Claims.

8.5     **Miscellaneous Distribution Provisions**

(a)     **Method of Cash Distributions**. All Distributions shall be made by the Plan Administrator or a duly-appointed disbursing agent to the holders of Allowed Claims. Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Plan Administrator or by wire transfer from a domestic bank, at the option of the Plan Administrator; provided, however, that Cash payments made to foreign Creditors, if any, holding Allowed Claims may be (but are not required to be) paid, at the option of the Plan Administrator in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

(b)     **No Distribution in Excess of Allowed Amount of Claim**. Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the amount of such Allowed Claim as provided herein.

(c)     **Minimum Cash Distributions**. The Plan Administrator shall not be required to make any distribution of Cash less than $25 to any holder of an Allowed Claim.

8.6     **Allocation of Payments**. Amounts paid to holders of Allowed Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess allocated to any pre-petition interest that has accrued on such Claims but remains unpaid.

Case 1-18-12156-CLB,    Doc 798,    Filed 11/15/24,    Entered 11/15/24 15:44:10,
Description: Main Document  , Page 39 of 58

8.7 **Setoffs**. The Plan Administrator is authorized, pursuant to and to the extent permitted by applicable law, to set off against any Allowed Claim and the distributions to be made on account of such Allowed Claim, the claims, rights, and Causes of Action of any nature that the Debtor or the Plan Administrator, as applicable, may hold against the holder of such Allowed Claim. Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor or the Plan Administrator of any such claims, rights, and Causes of Action the Debtor or the Plan Administrator, as applicable, may have against such holder.

8.8 **No Distribution Pending Allowance**. Notwithstanding any other provision of the Plan, no payment or distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order.

8.9 **Establishment of Reserves and Escrow of Cash Distributions**. (a) Unless otherwise agreed to in writing by the Debtor and the holder of any Claim, but not an Interest, to which this Section 8.8(a) applies, on the Effective Date, the Plan Administrator shall deposit in one or more segregated accounts, Cash equal to the amount necessary to fund the Disputed Claims Reserve and the Tort Claims Reserve. The Plan Administrator shall also segregate any interest, dividends or proceeds of such Cash. Such Cash together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto.

(b) The Disputed Claims Reserve and the Tort Claims Reserve shall contain Cash or property equal to 100% of the Cash or property to be distributed under the Plan

38

on account of such Disputed Claims that would be Allowed Claims but for the pendency of a dispute with respect the amount, validity or allowability of the Claim. The amount to be deposited into the Tort Claims Reserve shall be equal to the Tort Claims Assets. The Amount to be deposited into the Disputed Claims Reserve shall be equal to an amount equal to a Pro Rata percentage of the Non-Tort Claim Assets for all Disputed Claims (other than Tort Claims). In determining the amount of the Cash or property to be reserved in the Disputed Claims Reserve, the calculation of the distribution to each holder of an Allowed Claim in such class shall be made as if all Disputed Claims in the applicable class were Allowed Claims in their respective face amounts.

(c)     The Plan Administrator shall have the right to seek an Order of the Bankruptcy Court, after notice and a hearing, estimating or limiting the amount of Cash or property that must be so deposited. Any Creditor whose Claim is so estimated or limited shall have no recourse to any assets theretofore distributed on account of any Allowed Claim, or any other Entity or property if the Allowed Claim of the Creditor (whose Claim was so estimated or limited) as determined by Final Order exceeds the amount so deposited. Instead, such Creditor shall have recourse only to the undistributed assets in the Disputed Claims Reserve or Tort Claims Reserve (as applicable) (on a Pro Rata basis with other Creditors of the same Class who are similarly situated) that exceed the aggregate amount of all Disputed Claims allowed by Final Order.

8.10    **Investment of Segregated Cash and Property**.     To the extent practicable, the Plan Administrator may invest any Cash or other property segregated on account of a Disputed Claim, Disputed Interest, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment

39

or (ii) in any manner permitted by Section 345 of the Bankruptcy Code; provided, however, that the Plan Administrator shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.

8.11    **Distribution After Disallowance**.  Subject to Section 8.8 of the Plan, following the disallowance of any Disputed Claim, the Cash and other property segregated on account of Disputed Claims, including the allocable portion of the net return yielded from any investment thereof remaining after all Disputed Claims have been resolved by Final Order shall be available to the Plan Administrator for distribution to Allowed Claim pursuant to the provisions of the Plan.

8.12    **Surrender of Instruments; Execution of Satisfactions and Releases**.

(a)    Notwithstanding any other provision of the Plan, no Creditor, that holds a note or other instrument evidencing such Creditor's Claim may receive any distribution with respect to such Claim unless and until the original note or other original instrument evidencing such Claim shall have been validly surrendered to the Plan Administrator at the sole cost and expense of such Creditor.

(b)    Any Cash or property to be distributed pursuant to the Plan on account of any such Claim shall, pending surrender, be treated as an undeliverable distribution pursuant to Section 8.14 of the Plan.

(c)    In the event any Creditor is unable to surrender a note or other instrument evidencing a Claim against the Debtor that has been destroyed, lost or stolen, such

Entity may receive a distribution with respect to such Claim by presenting to the Plan Administrator, in a form acceptable to the Plan Administrator: (i) proof of such Entity's title to such Claim; (ii) an affidavit to the effect that the same has been lost and after diligent search cannot be located; and (iii) such indemnification as may be required by the Plan Administrator and all other Entities deemed appropriate by the Plan Administrator from any loss, action, suit or any claim whatsoever which may be made as a result of such Entity's receipt of a distribution under the Plan.

(d)     All questions as to the validity, form or eligibility of any Note or other instrument evidencing a Claim so surrendered shall be resolved by Final Order of the Bankruptcy Court. Neither the Debtor nor the Plan Administrator shall be under any duty to give notification of defects in such tender or shall incur liability for failure to give notification of such defects.

8.13    **Delivery of Distributions**. Except as provided in Sections 8.14 and 8.15 of the Plan, distributions to holders of Allowed Claims shall be made: (1) at the addresses set forth on the respective Proofs of Claim filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Plan Administrator after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim is filed and the Plan Administrator has not received a written notice of a change of address.

8.14    **Undeliverable Distributions**. (a) If the distribution to the holder of any Claim is returned to the Plan Administrator as undeliverable, no further distribution shall be made to such holder unless and until the Plan Administrator is notified in writing of such holder's then current address. Undeliverable distributions shall remain in the possession of the

41

Plan Administrator until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to Section 8.13 of the Plan.

(b)    Nothing contained in the Plan shall require the Debtor or the Plan Administrator to attempt to locate any holder of an Allowed Claim.

8.15    **Unclaimed Distributions**.  Any Cash or other property to be distributed under the Plan shall be retained by the Plan Administrator if it is not claimed by the Entity entitled thereto before the later of (i) one year after the Effective Date or (ii) 60 days after an Order allowing the Claim of that Entity becomes a Final Order and such entity's claim shall be deemed to be reduced to zero.

## ARTICLE IX

## INJUNCTION AND EXCULPATION

9.1    **No Discharge of Claims Against Debtor.**  Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of the Plan will **not** discharge Claims against the Debtor; provided, however, that no Creditor may, on account of its Claim, seek or receive any payment or other distribution from, or seek recourse against the Debtor, its successors or the Estate, for any property of the Estate that has been or will be distributed under the Plan or in violation of any other provision of this Plan.

9.2    **Injunction**.  Except (a) as otherwise provided in the Plan; or (b) as otherwise provided under the Confirmation Order entered by the Bankruptcy Court, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any Claim or Interest held as of the Effective Date:  (y) the commencement or continuation of any

action, the employment of process, or any act to collect, enforce, attach, recover or offset from property of the Estate that has been, or is to be, distributed under the Plan, and (z) the creation, perfection or enforcement of any lien or encumbrance against any property of the Estate that has been, or is to be transferred or distributed under the Plan.

9.3 **Limitation of Liability.** No Exculpated Entity shall have or incur any liability to any entity for any action taken or omitted to be taken from the Petition Date through the Effective Date in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement, or any other action taken or omitted to be taken in connection with the Plan, except in the case of fraud, gross negligence, or willful misconduct.

**EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED FOR IN THE PLAN OR CONFIRMATION ORDER, AS OF THE EFFECTIVE DATE, THE RELEASING ENTITIES ARE DEEMED TO HAVE RELEASED THE EXCULPATED ENTITIES FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, THAT EACH RELEASING ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE IN CONNECTION WITH OR RELATED TO THE FORMULATION, PREPARATION, DISSEMINATION, CONFIRMATION OR**

43

**CONSUMMATION OF THE PLAN, THE DISCLOSURE STATEMENT, OR ANY OTHER ACTION TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH THE PLAN, EXCEPT IN THE CASE OF FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT.**

**All Creditors, including those that vote to reject the Plan, shall be bound to the releases set forth in Section 9.3 of the Plan.**

Nothing in this Section 9.3 shall limit the liability of the Debtor's professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct.

9.4 **Cause of Action Injunction.** On and after the Effective Date, all persons or entities other than the Plan Administrator will be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of, or respecting any claim, debt, right, or Causes of Action that the Plan Administrator retains authority to pursue in accordance with the Plan. Notwithstanding the above, the United States shall have the right to pursue the Debtor's insurance coverage, to the extent it exists, solely with respect to environmental liabilities; provided, however, this shall not extend to claims against the Debtor's directors and officers liability coverage.

9.5 **Plan and Confirmation Order as Release**. Except as otherwise provided in the Plan, from and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense against a Releasing Entity to any claim or liability released pursuant to this Article IX of the Plan as to the Exculpated Entities.

9.6    **Preservation and Application of Insurance.** The provisions of the Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtor, any directors, trustees, or officers of the Debtor, or any other person, including, without limitation, insurance for the Debtor's directors and officers.

9.7    **Compromise of Controversies.** Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, the pending adversary proceeding filed by Certain Class Action and Personal Injury Plaintiffs against the Debtor (A.P. Case No. 19-01002), all Claims arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to, or in connection with the business or affairs of or transactions with the Debtor. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness.

9.8    **Solicitation of Plan**. As of and subject to the occurrence of the Confirmation Date: (a) the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, Sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such

45

solicitation and (b) the Debtor and each of their respective directors, officers, employees, affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

9.9 **Post-Confirmation Activity.** As of the Effective Date, the Plan Administrator may conclude the implementation of the Plan and winding down of the Debtor's affairs without supervision of the Bankruptcy Court, other than those restrictions expressly imposed by the Plan and the Confirmation Order. Without limiting the foregoing, the Plan Administrator may pay any charges it incurs for taxes, professional fees, disbursements, expenses, or related support services after the Effective Date without application to and approval of the Bankruptcy Court.

## ARTICLE X

### CONDITIONS TO CONFIRMATION
### AND OCCURRENCE OF EFFECTIVE DATE

10.1 **Conditions to Occurrence of Effective Date.** The Effective Date for the Plan may not occur unless each of the conditions set forth below is satisfied or waived:

(a)    The Bankruptcy Court shall have entered the Confirmation Order and it shall not have been stayed, modified, or vacated on appeal.

(b)    The Confirmation Order shall provide for the releases, injunctions, and exculpation of the persons provided for by the Plan.

(c)     If the Debtor is not serving as the Plan Administrator, its designee shall have been appointed as Plan Administrator and shall have accepted to act in such capacity in accordance with the terms and conditions of the Plan.

(d)     All actions, documents, and agreements necessary to implement and consummate the Plan, including the Plan Administrator Agreement, shall have been effected or executed and binding on all parties thereto.

(e)     All governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained, not be subject to unfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions.

10.2    **Effect of Nonoccurrence of the Conditions to Occurrence of Effective Date.**  If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly waived on or before the date which is no later than the first Business Day after 90 days after the Confirmation Date, or by such later date as is approved, after notice and a hearing, by the Bankruptcy Court, then upon motion by any party in interest made before the time that each of the conditions has been satisfied or duly waived, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to occurrence of the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion.  If the Confirmation Order is vacated pursuant the Plan, then the

47

Plan shall be null and void in all respects, and nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by or against the Debtor, or (b) prejudice in any manner the rights of the Debtor or of any other party in interest.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

11.1 **Orders in Aid of Consummation**. Pursuant to Sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

11.2 **Transfer Tax Requirements**. The transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under Section 1146 of the Bankruptcy Code.

11.3 **Due Authorization by Creditors**. Each and every Creditor who elects to participate in the distributions provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

11.4 **Pre-Confirmation Amendments**. The Debtor may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements, including those set forth in Section 1125.

11.5 **Post-Confirmation Amendment Not Requiring Resolicitation**. After the entry of the Confirmation Order, the Plan Administrator may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided (i) the Plan Administrator obtains approval of the Bankruptcy Court for such modification, after notice and a hearing, and (ii) such modification shall not materially and adversely affect the interests, rights, or treatment, of any Class under the Plan.

11.6 **Revocation**. The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order. If the Plan is revoked or withdrawn or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against the Debtor; or (ii) prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor or its Estate.

11.7 **Request for Relief Under Section 1129(b)**. If the Plan is accepted by one or more, but not all impaired Classes of Creditors, the Debtor may request confirmation under Section 1129(b) of the Bankruptcy Code, subject to any modification of the Plan made pursuant to Section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019.

11.8 **Filing of Additional Documents**. Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

11.9 **Section Headings**. The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

49

11.10  **Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

11.11  **Successors and Assigns**.  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

11.12  **Notices**.  All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a)  if to the Debtor, at Hodgson Russ LLP, 140 Pearl Street, Buffalo, New York 14202 (Attn:  James C. Thoman) and Debtor at P.O. Box 5007, Tonawanda, New York 14151.

(b)  if to any Creditor at (i) the addresses set forth on the applicable Proofs of Claim filed by such holder; (ii) the addresses set forth on the applicable changes delivered to the Plan Administrator after the date of any related Proof of Claim, or (iii) the address reflected in the Schedules if no Proof of Claim is filed and the Plan Administrator has not received a written notice of a change of address; and

(c)  if to any Entity that has filed a notice of appearance, at the address set forth on such notice of appearance.

11.13  **Governing Law**.  Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, and subject to the provisions of any contract, instrument, release or other agreement or document entered into in connection with the

50

Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York without giving effect to the principles of conflict of laws thereof.

11.14 **Other Actions**. Nothing contained herein shall prevent the Debtor or creditors from taking such actions as may be reasonably necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

11.15 **Severability**. In the event any provision of the Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

11.16 **Business Day**. In the event that the Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

**ARTICLE XII**

**RETENTION OF JURISDICTION**

12.1 **Retention of Jurisdiction**. Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

(a) Insure that the Plan is consummated, and to enter an Order pursuant to Section 1142(b) of the Bankruptcy Code, to compel the Debtor and any other necessary party to take such action and execute such documents to effectuate the Plan;

51

(b)     Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim, including, without limitation, the resolution of any request for payment of any Administrative Expense and the resolution of any and all objections to the allowance or priority of Claims;

(c)     Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

(d)     Resolve any motions pending on the Effective Date to assume, assume and assign, or reject any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate, any and all Claims arising therefrom;

(e)     Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(f)     Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(g)     Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Case;

Case 1-18-12156-CLB,    Doc 798,    Filed 11/15/24,    Entered 11/15/24 15:44:10,
Description: Main Document  , Page 54 of 58

(h)     Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(i)     Modify the Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code, and modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(j)     Cure any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(k)     Issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(l)     Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(m)     Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order;

(n)     Enter and implement such orders as are necessary or appropriate to implement or consummate the proposed sale of the Property.

(o)     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement; and

(p)     Enter an Order or Final Decree concluding the Case.

12.2    **Post-Closing Jurisdiction**.  Notwithstanding the entry of a Final Decree or an Order closing the case, the Bankruptcy Court shall retain jurisdiction to reopen the case for the purpose of enforcing, by injunction or otherwise, the term of the Plan, the Confirmation Order and any Final Decree, including, without limitation, the enforcement of any rights of the Debtor.

## ARTICLE XIII

## CLOSING THE CASE

13.1    **Substantial Consummation**.  Until the occurrence of the Effective Date and Substantial Consummation of the Plan, the Debtor, its property and its creditors shall be subject to further orders of the Bankruptcy Court.

13.2    **Closing the Case**.  Upon the Substantial Consummation of the Plan, the Debtor shall expeditiously move for the entry of a Final Decree closing the Case and such other relief as may be just and appropriate. The application for the Final Decree shall include an accounting of all funds received by the Plan Administrator and their disposition. Notice of the application for entry of a Final Decree shall be given to those parties who would be entitled to notice under the Bankruptcy Court's case management procedures Order entered on January 2,

2019 [Docket No. 144], and such notice shall advise that the application includes a final accounting of all funds received and disbursed by the Plan Administrator.

Case 1-18-12156-CLB,    Doc 798,    Filed 11/15/24,    Entered 11/15/24 15:44:10,
Description: Main Document  , Page 57 of 58

**DATED:**    Buffalo, New York
November 15, 2024

**HODGSON RUSS LLP**

By:    */s/ James C. Thoman*
         James C. Thoman, Esq.
Attorneys for Debtor
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000


    */s/ Michael Durkin*
TONAWANDA COKE CORPORATION
By:   Michael Durkin
Title:  President